*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0146p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

AMERICAN CIVIL LIBERTIES UNION OF KENTUCKY;
BART MCQUEARY,

                                *Plaintiffs-Appellants,*

        *v.*

MERCER COUNTY, KENTUCKY; CHARLES H.
MCGINNIS, in his official capacity as Mercer County
Judge Executive,

                                *Defendants-Appellees.*

No. 03-5142

---

Filed: April 24, 2006

Before: SUHRHEINRICH and BATCHELDER, Circuit Judges; RICE, District Judge.[*]

---

## ORDER

---

This matter comes before the court upon the petition for rehearing *en banc*, filed by counsel for the appellants, and the response of the appellees thereto. The petition has been circulated not only to the original panel members but also to all other judges of the court in regular active service, less than a majority of whom have voted in favor of rehearing en banc. Accordingly, the petition has been returned to the panel for decision.

Upon consideration of the petition and the response, the panel concludes that the issues raised therein were fully considered upon the original submission and decision of the case, and the request for rehearing is therefore denied.

---

[*] The Honorable Walter H. Rice, United States District Judge for the Southern District of Ohio, sitting by designation.

R. GUY COLE, JR., Circuit Judge, with whom MARTIN, DAUGHTREY, MOORE, and CLAY, Circuit Judges, join, dissenting from the denial of rehearing en banc. In *ACLU v. Mercer County*, 432 F.3d 624 (6th Cir. 2005), a panel of this Court upheld the constitutionality of a certain display containing the Ten Commandments. In order to do so, the panel was willing to deviate from the precedent of this Court, *see, e.g., ACLU v. Ashbrook*, 375 F.3d 484 (6th Cir. 2004); *ACLU v. McCreary County*, 354 F.3d 438 (6th Cir. 2003), *aff'd, McCreary County v. ACLU*, 125 S. Ct. 2722, 2733 (2005); *Baker v. Adams County*, 310 F.3d 927 (6th Cir. 2002), and to mischaracterize Supreme Court precedent. In essence, the panel announced a new rule: that an overt sectarian legislative history is *necessary*, as a matter of law, before a display will be invalidated. The panel premised this novel principle on a recent Supreme Court holding that an avowed sectarian purpose is *sufficient* to invalidate a display. *See McCreary County*, 125 S. Ct. at 2733. Because the most charitable characterization of the panel's decision is that it makes an illogical inference, I respectfully dissent from the order denying en banc rehearing by this Court.

As the panel acknowledged, the stories of the Ten Commandment displays erected by Mercer and McCreary, two counties in the State of Kentucky, are intertwined. In the summer of 1999, two bordering counties (McCreary and Pulaski) erected identical Ten Commandments displays. Both displays were successfully challenged by the ACLU and both counties, "[a]fter changing counsel," twice revised the exhibits in response. *McCreary County*, 125 S. Ct. at 2727-28. The district court found the third and final display unconstitutional; this Court and the Supreme Court affirmed. Meanwhile, *within four months* of the district court order enjoining the final McCreary and Pulaski county display, four other counties (Mercer, Rowan, Garrard, and Grayson) *exactly copied* that display. In fact, on appeal from the resulting ACLU challenge, the panel in *Mercer County* held the case in abeyance, precisely "[b]ecause the challenged display [was] identical in all material respects to the third and final display in *McCreary County*." *Mercer County,* 432 F.3d at 626.

I can only assume that the panel hoped that the Supreme Court would abandon the *Lemon* test, which would have made its preordained result easier to reach. *Cf. Books v. Elkhart County*, 401 F.3d 857 (7th Cir. 2005) ("*Lemon* days may be numbered; we are aware that the Supreme Court's resolution of two Ten Commandments cases accepted for review this Term may undo our work here."). According to the *Lemon* test, a government action cannot have the exclusive purpose or effect of advancing a religious agenda, nor may the government become excessively entangled with a religious enterprise. *See Lemon v. Kurtzman*, 403 U.S. 602, 612 (1971).

Unfortunately for the panel, the Supreme Court instead fashioned a more stringent establishment test. *See McCreary County*, 125 S. Ct. at 2733; *id.* at 2748 (Scalia, J., dissenting); *Mercer County*, 432 F.3d at 630. Following *McCreary County*, not only must a state evince a secular purpose in its display of the Ten Commandments, the secular purpose must predominate. 125 S. Ct. at 2733. According to the Supreme Court, whether such a purpose predominates is to be judged by the "reasonable observer." *Id.* at 2737. In addition to knowledge of the "text, legislative history, and implementation" of the state action at issue, "reasonable observers have reasonable memories, and [Supreme Court] precedents sensibly forbid an observer 'to turn a blind eye to the context in which [the display] arose.'" *Id.* (quoting *Santa Fe Indep. Sch. Dist. v. Doe*, 520 U.S. 290, 315 (2000)). The Supreme Court expressly rejected McCreary County's invitation to use as its lodestar "an absent minded objective observer" who could infer purpose "only from the latest news about the last in a series of governmental actions." *Id.* at 2736-37.

But the panel would not be daunted. Despite the identity that occasioned the continuance, and in the face of a more stringent establishment test, the panel upheld the Mercer County display on summary judgment. According to the panel:

> Critical to the finding of sectarian purpose in McCreary County was the extended
> history: the original standalone copy of the Ten Commandments; a pastor's speaking

to the existence of God at the hanging ceremony; a second, more distinctly religious display; and the "extraordinary" resolutions authorizing the displays that were not repealed even after the "Foundations" display was posted. The objective observer in McCreary and Pulaski Counties was deemed aware of this background, and thus saw an impermissible purpose.

*Id.* at 630.

Of course, everyone concedes that the *McCreary County* Court looked at the legislative history of the display; legislative history is, after all, material to what the reasonable observer would understand to be the government's predominant purpose. *See McCreary County*, 125 S. Ct. at 2737. However, and although heavily downplayed by the panel, the Supreme Court also premised its decision to invalidate the McCreary County display on its observations regarding the content of that display. According to the *McCreary County* Court, the display at issue "quoted more of the purely religious language of the Commandments than the first two [invalidated] displays had done." *Id.* at 2740. The Court characterized the inclusion of the Declaration of Independence and the Magna Carta, both of which contain a reference to God, coupled with the exclusion of the original Constitution and the Fourteenth Amendment, as "baffling." *Id.* Summing up, the Supreme Court found of the content that "[i]f the observer had not thrown up his hands, he would probably suspect that the Counties were simply reaching for any way to keep a religious document on the walls of a courthouse constitutionally required to embody religious neutrality." *Id.* at 2740-41.

In that it is *identical* to the McCreary County display, the Mercer County display also contains "purely religious language"; the county's exclusion of secular foundational documents is equally "odd," "baffling," and facially suspicious. *See id.* Admittedly, no Mercer County pastor spoke at the hanging ceremony. But neither this Court, nor the Supreme Court, has ever held that an admittedly sectarian legislative history is necessary, as a matter of law, to a finding of impermissible endorsement.

Nor is the reasonable observer limited to the content of the display in this case; the Mercer County display has a context. It is undisputed that Mercer County exactly copied the third in a series of displays of two counties which were, according to this and the Supreme Court, attempting to advance a religious purpose. As the panel conceded, it would be "naive" to assume that the reasonable observer would be ignorant of highly public events in McCreary and Pulaski counties. *Mercer County,* 432 F.3d at 632 n.6. I think it equally naive to assume that the reasonable observer would not be aware of Mercer County's related activity of copying the disputed display. Given the Supreme Court's characterization of the display, of which the reasonable observer is also presumed aware, can it be gainsaid that the reasonable observer would *at least arguably* detect something less than a predominantly secular purpose in Mercer County's timely actions? Recall, too, the current posture of the litigation, whereby all inferences are to be drawn in favor of the nonmoving party.

The ACLU argued exactly this on appeal. The panel answered that the Supreme Court "'did not decide that [McCreary and Pulaski] Counties' past actions forever taint any effort . . . to deal with the subject matter.'" *See Mercer County,* 432 F.3d at 632 n.6 (quoting *McCreary County*, 125 S. Ct. at 2741). The panel then reasoned that "[i]f the counties involved in *McCreary County* may purge themselves of the impermissible purpose, if follows *a fortiori* that Mercer County may act free of the *McCreary County* taint." *Id.* Excavated from footnote six and dragged into the light of day, it is clear that the panel's response is inadequate. What follows from the Supreme Court's statement is that one day, after there has been a "genuine change[] in constitutionally significant conditions," *McCreary County*, 125 S. Ct. at 2741, both McCreary and Mercer counties will be free to revisit their efforts to display the Ten Commandments as part of a civic exhibit.

The panel pointed to no changes of constitutional significance since *McCreary County*, unless the panel would constitutionalize the fifty miles[1] of Kentucky between the courthouses. Although perhaps best left to the finder of fact, the inference that Mercer County had a similar purpose of advancing religion as some of its fellow counties follows not from the sheer physical proximity, but from the observation that it choreographed its activity alongside them. Somehow I doubt that the Mercer County officials were surprised to find out that they had coincidentally erected the same display as their sister counties, at almost the exact same time. No more do I believe it a coincidence that the panel relegated what was by far the ACLU's most powerful argument to a footnote.

The panel added that "the sins of one government should not be revisited on other governments." *See Mercer County,* 432 F.3d at 632 n.6. The panel's comment is not a legal argument, and mischaracterizes the central concerns of the Establishment Clause. Supreme Court establishment precedent has long concerned itself with public perception, which is exactly why it looks to the observer. *See, e.g., County of Allegheny v. ACLU*, 492 U.S. 573, 593-94 (1998); *Lemon*, 403 U.S. at 612. Even if Mercer County were indisputably without "sin," the concern remains that the display "sends a message to nonadherents that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members of the political community." *McCreary County*, 125 S. Ct. at 2733 (quoting *County of Alleghany*, 492 U.S. at 594). In light of recent local events, it defies reason to think that the Mercer County non-adherent passes by the Ten Commandments display in his state courthouse, reads the opening words "Thou shall have no other gods before me," and thinks, "Thank goodness I don't live near my uncle in McCreary County, where I'd be a second-class citizen." Rather, he sees the exhibit and, given its content and context, understandably throws up his hands in frustration.

In short, the panel essentially ignored the Supreme Court's characterization of the content of the Mercer County display. The panel flouted the Supreme Court's charge that the reasonable observer not be "absentminded," and the panel viewed context as coterminous with legislative history. *Compare Mercer County*, 432 F.3d at 632 ("The objective observer has no recent history of religiously motivated governmental acts or resolutions to incorporate into the display.") *with McCreary County*, 125 S. Ct. 2737 ("The Counties' position just bucks common sense; reasonable observers have reasonable memories, and our precedents sensibly forbid an observer 'to turn a blind eye to the context in which [the] policy arose.'"). The panel read Mercer County's action of quickly and exactly copying its fellow counties' embattled and religiously motivated display out of the record. Rather, the panel held as a matter of law, ostensibly construing the evidence in the light most favorable to the nonmoving party, that the reasonable observer would perceive a predominantly secular purpose behind Mercer County's display.

For all these reasons, I respectfully dissent from the denial of rehearing en banc.

ENTERED BY ORDER OF THE COURT

/s/ Leonard Green

_____

Clerk

---

[1]*See* Dan Horn, *10 Commandments OK'd at Courthouse*, CINCINNATI ENQUIRER, Dec. 21, 2005 ("A Cincinnati appeals court ruled Tuesday that a Kentucky courthouse can display the Ten Commandments alongside other historical documents, even though the U.S. Supreme Court recently barred a similar display 50 miles away [in Pulaski County.]").