**AMERICAN CIVIL LIBERTIES UNION OF KENTUCKY, et al., Plaintiffs**

v.

**GARRARD COUNTY, KENTUCKY, et al., Defendants.**

Civil Action No. 01–481–KSF.

United States District Court,
E.D. Kentucky,
at Lexington.

Sept. 5, 2007.

David A. Friedman, American Civil Liberties Union of KY, Everett C. Hoffman, Priddy, Cutler, Miller & Meade, PLLC, Louisville, KY, for Plaintiffs.

Francis J. Manion, American Center for Law & Justice, New Hope, KY, for Defendants.

### OPINION & ORDER

KARL S. FORESTER, Senior District Judge.

This matter is before the Court on the motion of defendant Garrard County for

summary judgment [DE # 44] and raises the following question: If a county gets it wrong in displaying the Ten Commandments, what does it then take to get it "right" such that it passes constitutional muster? This is also the question raised but not answered by the United States Supreme Court in *McCreary County, Ky. v. ACLU*, 545 U.S. 844, 125 S.Ct. 2722, 162 L.Ed.2d 729 (2005), wherein the United States Supreme Court noted that "under the Establishment Clause detail is key." *Id.* at 867, 125 S.Ct. 2722.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In December of 1999, defendant Garrard County, Kentucky ("Garrard County"), acting through the Fiscal Court, voted to display in the Garrard County Courthouse a copy of "the 'Ten Commandments' as well as other historic documents" (hereinafter referred to as the "1999 Display") in response to a request of a local citizen. There is some dispute in the record as to whether a stand-alone copy of the Ten Commandments was displayed in the courthouse prior to that time, which dispute is discussed below, but the facts regarding the 1999 Display are not in dispute. According to meeting minutes of the Fiscal Court, Garrard County gave authority to the Garrard County Ministerial Association to post the display in the Courthouse and Annex Building and, should the association fail to do so for any reason, any other group or individual would have the same right.

On December 23, 1999, a ceremony was held to erect the display, which consisted of the following documents: [1]

- A large copy of the edited King James version of the Ten Commandments;
- The passage from the Declaration of Independence including the phrase that men are "endowed by their Creator" with certain rights;
- The preamble to the Kentucky Constitution;
- The national motto, "In God We Trust";
- A page from the Congressional Record of February 2, 1983, proclaiming the Year of the Bible and including a statement of the Ten Commandments;
- A proclamation by President Abraham Lincoln designating April 30, 1863, a national Day of Prayer and Humiliation;
- An excerpt from President Lincoln's "Reply to Loyal Colored People of Baltimore upon Presentation of a Bible," which reads that "[t]he Bible is the best gift God has ever given to man";
- A proclamation by President Ronald Reagan marking 1983 as the "Year of the Bible"; and
- A copy of the Mayflower Compact.

The copy of the Ten Commandments was in the center and was several times larger than the other documents, which were of equal size. No county funds were used to pay for the display nor its installation. Several members of the Garrard County Fiscal Court were present at the ceremony, as well as defendant E.J. Hasty, the County Judge–Executive (hereinafter "Hasty"), but none spoke. There were several preachers present and Christian prayers were spoken. A photograph of the ceremony depicts a Garrard County

---

1. The documents are not described in detail in the present record. However, both parties agree that the 1999 Display is identical to the second display in the case of *McCreary Coun-*

*ty, Ky. v. ACLU*, 545 U.S. 844, 125 S.Ct. 2722, 162 L.Ed.2d 729 (2005), so the Court has gleaned details of the display from that case.

magistrate and two preachers holding the display with heads hung in prayer.

On November 27, 2001, plaintiffs American Civil Liberties Union ("ACLU"), David Wilson, and Kenneth Tunnell filed the present suit objecting to the Ten Commandments and a separate display hanging in a county hospital.[2] On December 4, 2001, the Garrard County Fiscal Court met in Executive Session (a meeting that was opened with prayer) to discuss a purchase of real estate and the litigation regarding the 1999 Display. The minutes reflect that a motion was approved to "allow the current Ten Commandments to remain" until legal counsel could be hired, or until the next regular Fiscal Court meeting. At that next meeting, the Fiscal Court hired counsel and also accepted a petition signed by over 1300 residents of Garrard County in support of the December 4th action of the county allowing the 1999 Display to remain.

Thereafter, the plaintiffs filed a motion for a preliminary injunction asking that the display be removed, and the defendants filed a motion for summary judgment asking that the display be allowed to remain. A hearing on the motions was held on August 22, 2002, at which time the 1999 Display remained on the courthouse walls. At that time, the Court also heard arguments on two other cases involving the posting of the Ten Commandments in county courthouses in Rowan and Mercer counties.

The Court took the motions under advisement, but indicated from the bench that it would likely allow the Mercer County display—referred to as the "Foundations of American Law and Government" display—to remain. In light of the comments made by the Court, the Garrard County Fiscal Court convened on August 26, 2002, and authorized the Ten Commandments Advancement Committee of Corbin to remove the 1999 Display and install a display identical to the Mercer County display. As with the 1999 Display, no county funds were used to pay for or install the new display.

It is unclear from the record exactly when the new display was erected in the courthouse, but this display, which the parties agree is identical to the third display in *McCreary County* and the first and only display in *ACLU v. Mercer County, Ky.*, 432 F.3d 624 (6th Cir.2005), included the following (hereinafter collectively referred to as the "Foundations Display"):

- A copy of the King James version of the Ten Commandments;
- A copy of the Magna Carta;
- A copy of the entire Declaration of Independence;
- A copy of the Bill of Rights;
- The lyrics of the Star Spangled Banner;
- A copy of the Mayflower Compact;
- The national motto, "In God We Trust";
- The preamble to the Kentucky Constitution; and
- A picture of Lady Justice.

The documents in the Foundations Display were all of the same size and each was accompanied by a statement describing its historical and legal significance.

At its next regular meeting on September 10, 2002, the Fiscal Court approved Resolution # 09–10–02–01 (hereinafter the "Resolution") "relating to the acceptance and the installation of the Ten Command-

---

2. The claim regarding the hospital display has been resolved on summary judgment and is not the subject of the present motion.

ments display in the Courthouse." The Resolution states that the Fiscal Court wishes to continue to display historical documents that have been part of the formation of American law and government, "including the Ten Commandments," but in such a way as to clear up any "misunderstanding or misinterpretation of the county's purpose and intent...." Thus, the county resolved that it was its purpose, "in displaying these texts and symbols, to increase our citizens' awareness of and appreciation for the rule of Law and its diverse historical sources." The Resolution also disclaimed any purpose or intent to promote or endorse any religious view, but simply to acknowledge some of the many influences that have "shaped our heritage[,]" and further reaffirmed the county's commitment to the free exercise of religion by all the county's citizens. While the Resolution required that a copy be prominently displayed with the Foundations Display, it was not included with the display when originally erected.

On September 30, 2002, the Court granted summary judgment in favor of the defendants with respect to the hospital display on the basis of standing, but denied the plaintiffs' preliminary injunction motion and the defendants' motion for summary judgment with respect to the display in the Courthouse. The Court then stayed the case pending a decision in the *McCreary County* case, which at that time was before the Sixth Circuit.

This matter remained stayed until the United States Supreme Court issued its decision in *McCreary County* on June 26, 2005. Thereafter, the Court held a status conference and discovery was reopened on January 13, 2006. In the meantime, the Sixth Circuit issued a decision in the *Mercer County* case. After a telephone status conference during the summer of 2006, the Court filed a dispositive motion schedule and the present motion followed.

## II. STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Companies, Inc.,* 8 F.3d 335, 340 (6th Cir.1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the

jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S.Ct. 2505. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. DECISIONS IN *McCREARY COUNTY* AND *MERCER COUNTY*

The parties agree that the present case is governed by the United States Supreme Court decision in *McCreary County, Ky. v. ACLU*, 545 U.S. 844, 125 S.Ct. 2722, 162 L.Ed.2d 729 (2005), and the Sixth Circuit's opinion in *ACLU v. Mercer County, Ky.*, 432 F.3d 624 (6th Cir.2005). There is much in these cases for both sides to rely on in support of their respective arguments. Therefore, the Court finds a more lengthy than usual discussion of these cases to be warranted.

### A. *McCreary County*

The *McCreary County* case involved courthouse displays in McCreary and Pulaski counties. McCreary County posted a large stand-alone copy of the Ten Commandments on the courthouse walls in response to an order of the Fiscal Court requiring the display to be posted in "a very high traffic area" of the courthouse. *McCreary County*, 545 U.S. at 851, 125 S.Ct. 2722. In Pulaski County, a similar display was erected in a ceremony presided over by the County Judge–Executive, who called the Ten Commandments "good rules to live by" and noted that astronauts were convinced "there must be a divine God" after viewing the Earth from the moon. *Id.* The Pulaski County Judge–Executive was accompanied by his local pastor, who said the Ten Commandments were a "creed of ethics" and who later told the press that displaying the Commandments was "one of the greatest things the

judge could have done to close out the millennium." *Id.*

The ACLU and others sued the counties in federal court and sought a preliminary injunction to remove the offending displays. Before the court could rule on the request for an injunction, both counties enacted resolutions ordering that expanded displays—displays identical to the 1999 Display in the present case—be erected. The largely identical county resolutions made several references to the Ten Commandments, Alabama Judge Roy Moore, and Jesus Christ as the "Prince of Ethics." *Id.* at 852–53, 125 S.Ct. 2722. A copy of the resolution was posted with each expanded display.

Following the test set forth in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the district court ordered that the displays be removed, finding that the original display lacked any secular purpose and that the expanded display (identical to the 1999 Display herein) also clearly lacked a secular purpose because of the counties' narrow tailoring of documents "to incorporate only those with specific references to Christianity." *Id.* at 854–55, 125 S.Ct. 2722.

After hiring new counsel, the counties erected a third display identical to the Foundations Display in the present case. There were no resolutions accompanying this display and the previous resolutions were not repealed by the counties. *Id.* at 855–56, 125 S.Ct. 2722. The ACLU again moved for a preliminary injunction with respect to the third display and the district court granted the motion, noting that the Ten Commandments' foundational value was a religious, rather than a secular, purpose. Based on the history of the litigation, the district court rejected the new assertion that the counties had broader educational goals. *Id.* at 857, 125 S.Ct. 2722. Ultimately, the district court deter-

mined that the counties' clear purpose was to post the Ten Commandments, not to educate its citizens. *Id.* A divided panel of the Sixth Circuit affirmed and the United States Supreme Court ultimately granted certiorari and affirmed by a vote of 5–4.[3]

While many commentators saw *McCreary County* as a chance for the Supreme Court to abandon the oft-criticized *Lemon* test, the *Lemon* test survived relatively unscathed. The Court reiterated that "[t]he touchstone for [the] analysis is the principle that the 'First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion.'" *Id.* at 860, 125 S.Ct. 2722 (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968)). It also reaffirmed that a government violates the Establishment Clause when it "acts with the ostensible and predominant purpose of advancing religion...." *Id.*

The Supreme Court specifically rejected the counties' call to abandon the purpose test of *Lemon*, noting that "[e]xamination of purpose is a staple of statutory interpretation that makes up the daily fare of every appellate court in the country ... and governmental purpose is a key element of a good deal of constitutional doctrine...." *Id.* at 861, 125 S.Ct. 2722. However, the Court noted that while *Lemon's* "secular legislative purpose" inquiry has been a common element of its Establishment Clause cases, this element has seldom been dispositive. *Id.* at 859, 125 S.Ct. 2722.

■ After giving lower courts direction in what to look for in determining purpose, the Supreme Court next rejected the counties' arguments that "any transparent claim to secularity" would satisfy the purpose element, without regard to context or history. Noting that while "a legislature's stated reasons will generally get deference, the secular purpose required has to be genuine, not a sham, and not merely secondary to a religious objective." *Id.* at 864, 125 S.Ct. 2722. Thus, "in those unusual cases where the claim [is] an apparent sham, or the secular purpose secondary," the Supreme Court suggests that it is the lower court's duty to question that claim. *Id.* at 865, 125 S.Ct. 2722.

In determining purpose, the Supreme Court provides the following guidance:

... [A]n understanding of official objective emerges from readily discoverable fact, without any judicial psychoanalysis of a drafter's heart of hearts.... The eyes that look to purpose belong to an " 'objective observer,' " one who takes account of the traditional external signs that show up in the " 'text, legislative history, and implementation of the statute,' " or comparable official act....

*Id.* at 862, 125 S.Ct. 2722 (citations omitted). The Supreme Court also counsels that courts must look to "openly available data" of a legislature's purpose, and cannot "look to the veiled psyche of government officers...." *Id.* at 863, 125 S.Ct. 2722. Any personal religious intent that is disguised so cleverly that an objective observer cannot discern it "is no reason for great constitutional concern." *Id.*

---

**3.** A word about the procedural posture of that case is in order. The *McCreary County* case came to the Supreme Court on appeal from a preliminary injunction. Thus, the Court reviewed the district court's conclusion—the ACLU's likelihood of success on the merits— for abuse of discretion. The Supreme Court did not pass upon the ultimate merits of the case. Despite the different procedural postures, there is sufficient guidance and direction provided by the Supreme Court to apply the principles set forth in *McCreary County* to the present case, keeping in mind the higher summary judgment standard.

So, despite a county's claim of a secular purpose, "the world is not made brand new every morning," *id.* at 866, 125 S.Ct. 2722, and so the objective observer does not consider only the "latest news about the last in a series of governmental action, however close they may all be in time and subject." *Id.* Rather, the objective observer is one who is "presumed to be familiar with the history of the government's actions and competent to learn what history has to. show." *Id.* Thus, the objective observer "in the endorsement inquiry must be deemed aware of the history and context of the community and forum in which the religious display appears[.]" *Id.* (citation and quotations omitted). The Supreme Court recognizes that this necessarily means that identical displays may be treated differently under an Establishment Clause analysis.

> "Just as Holmes's dog could tell the difference between being kicked and being stumbled over, it will matter to objective observers whether posting the Commandments follows on the heels of displays motivated by sectarianism, or whether it lacks a history demonstrating that purpose.... [W]here one display has a history manifesting sectarian purpose that the other lacks, it is appropriate that they be treated differently, for the one display will be properly understood as demonstrating a preference for one group of religious believers as against another."

*Id.* at 866 n. 14, 125 S.Ct. 2722.

Considering the context and history of the displays at issue, the Supreme Court noted that a similar display rejected in *Stone v. Graham,* 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980), "had no context that might have indicated an object beyond the religious character of the text, and the Counties' solo exhibit in *McCreary County* did nothing more to counter the sectarian implication than the postings at issue in *Stone.*" *Id.* at 868, 125 S.Ct. 2722. Further, with regard to the first display, the Supreme Court recognized the secular influence of the Ten Commandments, but also stated the following:

> The point is simply that the original text viewed in its entirety is an unmistakably religious statement dealing with religious obligations and with morality subject to religious sanction. When the government initiates an effort to place this statement alone in public view, a religious object is unmistakable.

*Id.* at 869, 125 S.Ct. 2722.

With respect to the second display identical to the 1999 Display herein (but with an accompanying resolution), which the counties erected after suit was filed, the Supreme Court noted that the display

> juxtapos[ed] the Commandments to other documents with highlighted references to God as their sole common element. The display's unstinting focus was on religious passages, showing that the Counties were posting the commandments precisely because of their sectarian content. That demonstration of the government's objective was enhanced by serial religious references and the accompanying resolution's claim about the embodiment of ethics in Christ. Together, the display and resolution presented an indisputable, and undisputed, showing of an impermissible purpose.

*Id.* at 870, 125 S.Ct. 2722. While the Counties described this display as "dead and buried," the Supreme Court noted that "the reasonable observer could not forget it." *Id.*

As to the third· or "Foundations Display," the Supreme Court noted that the counties had offered several new purposes for the third version, one of which was a desire to educate its citizens (similar to the purpose set forth in the Resolution in the

present case). However, the counties had never repealed the resolutions passed in connection with the second displays nor repudiated them in any way, nor had it taken any further authorizing action with respect to these new purposes. Therefore, the Supreme Court saw the "desire to educate" as being presented "only as a litigating position." *Id.* at 871–72, 125 S.Ct. 2722. Given the context and history, the Supreme Court concluded that "[n]o reasonable observer could swallow the claim that the Counties had cast off the objective so unmistakable in the earlier displays."[4] The Supreme Court also criticized the selection of the posted materials in the Foundations Display as "odd," "baffling," and "perplexing." *Id.* at 872–73, 125 S.Ct. 2722.

What did the Supreme Court say about changed circumstances? Relevant to this case, once a county has gotten it wrong, can it ever get it right? The Supreme Court seems to have answered this question in the affirmative:

> [W]e do not decide that the Counties' past actions forever taint any effort on their part to deal with the subject matter. We hold only that purpose needs to be taken seriously under the Establishment Clause and needs to be understood in light of context; an implausible claim that governmental purpose has changed should not carry the day in a court of law any more than in a head with common sense. It is enough to say here that district courts are fully capable of adjusting preliminary relief to take account of genuine changes in constitutionally significant conditions.

*Id.* at 873–74, 125 S.Ct. 2722. Thus, even counties such as McCreary and Pulaski,

with such an overtly religious purpose in the past, may be able to "get it right" at some point in the future, based on genuine changes in constitutionally significant conditions. Of course, the Supreme Court provides no guidance as to what might constitute these "genuine changes," so lower courts are left to make that determination themselves.

■ In discussing the dissent, the majority stressed "the importance of neutrality as an interpretive guide[:]"

> Given the variety of interpretative problems, the principle of neutrality has provided a good sense of direction: the government may not favor one religion over another, or religion over irreligion, religious choice being the prerogative of individuals under the Free Exercise Clause.

*Id.* at 874–75, 125 S.Ct. 2722. Given the "divisiveness of religion in current public life[,] ... [t]his is no time to deny the prudence of understanding the Establishment Clause to require the Government to stay neutral on religious belief, which is reserved for the conscience of the individual." *Id.* at 881, 125 S.Ct. 2722.

### B. *Mercer County*

In late 2005, the Sixth Circuit decided another pending Ten Commandments case, *ACLU v. Mercer County, Ky.*, 432 F.3d 624 (6th Cir.2005), that had been stayed pending a decision in *McCreary County*. The *Mercer County* case involved one and only one display. In 2001, a Mercer County resident requested permission to hang a display identical to the Foundations Display at issue herein in the Mercer county courthouse. The Fiscal Court, aware "that the Kentucky General Assembly had re-

---

4. The Court finds it somewhat contradictory for the Supreme Court to be making this strong of a finding on what seems to be the merits of the case when it was presented only as an appeal from a preliminary injunction. The Court seemed to go farther than necessary given the procedural posture of the case.

cently passed a resolution authorizing the inclusion of the Ten Commandments in displays of formative, historical documents on government property," *id.* at 626, voted in favor of the request. No county funds were used in connection with the display. There apparently was no additional resolution nor any ceremony solemnized by a clergyman held when the display was erected.

Shortly thereafter, the ACLU filed suit in this Court[5] and sought a preliminary injunction and the county moved for summary judgment. After a hearing on the motions, this Court indicated from the bench that it would deny the motion for preliminary injunction based on application of the *Lemon* test. In a later written opinion, this Court found that "Mercer County's stated secular purpose—recognition of the historical significance of the documents included in the display—was not a sham." *Id.* Because there was nothing in the legislative history indicating religious purpose, this Court held that Mercer County had a secular purpose in erecting the display. This Court also held that "the reasonable person would not view the display as an endorsement of religion." *Id.* at 627–28. After allowing time for limited discovery, the Court granted the county's motion for summary judgment and dismissed the ACLU's claims with prejudice. The ACLU appealed and the case was argued to a panel of the Sixth Circuit. Thereafter, the United States Supreme Court granted certiorari in *McCreary County,* so the case was stayed.

Once *McCreary County* was decided and after supplemental briefing, the Sixth Circuit affirmed this Court's rulings. It first analyzed the display under *McCreary County* and agreed with Mercer county officials that "the predominant purpose of the display in this case [was] secular." *Id.* at 631. Contrasting the history of the lone Mercer County display with the history of the multiple displays in *McCreary County,* the Sixth Circuit noted that the Mercer County display "lack[ed] a similar sectarian pedigree. Here, there was only one display, one authorizing measure, and one implementation, all of which demonstrate[d] a secular purpose." *Id.*

Noting that courts defer to the stated governmental purpose except "in *unusual* cases where the claim was an apparent sham," *id.* at 632–33 (emphasis in original), the Sixth Circuit found that Mercer County was not one of those cases. Rather, the county's stated purpose was supported by objective evidence and context. Thus, the Sixth Circuit concluded "[a] reasonable objective observer would not view this display as an attempt by Mercer County to establish religion. Instead, he would view it for what it is: an acknowledgment of history." *Id.* at 632.

The court found that there was no evidence that the stated purpose was a sham. By way of example, the Sixth Circuit noted the following:

> The Mercer County display was neither immediately preceded by nor invariably connected to previous unconstitutional displays. As the district court said, "the Commandments were displayed in a proper historical context *ab initio,*'" untainted by previous impermissible attempts to exhibit the Decalogue like those that proved fatal in *McCreary County.* The objective observer in Mercer County has no recent history of religiously motivated governmental acts or resolutions to incorporate into the dis-

5. The complaint in the *Mercer County* case was filed on the same day as the complaint in the present case and the complaint in *ACLU v.* *Rowan County,* Civil No. 01–220–KSF (E.D.Ky.) (pending separately).

play. We conclude therefore, that the predominant purpose of the "Foundations" display is secular.

*Id.* (citations and footnote omitted). The Sixth Circuit, like the Supreme Court in *McCreary County,* recognized that "identical displays may nonetheless be constitutionally unique[.]" *Id.*

The Sixth Circuit also noted that Mercer County had authorized the posting of the Foundations Display "in an attempt to recognize American legal history." *Id.* at 632. Because there was nothing to suggest a predominantly religious message, it did not run afoul of the Establishment Clause. As for the specific documents chosen by the county, the Sixth Circuit was "not persuaded by comments indicating that the Supreme Court would have posted a different display." *Id.* at 633 n. 7. "What five justices of the Supreme Court would include in a display commemorating Kentucky and American legal history has no bearing on the constitutionality of the display as erected[,]" according to the Sixth Circuit. *Id.*

After determining that the Foundations Display in Mercer County survived scrutiny under *McCreary County,* the Sixth Circuit then proceeded to determine whether any additional scrutiny was warranted under the *Lemon* test. It noted that while "*Lemon* has been criticized by a number of Supreme Court justices[,]" the Supreme Court's decision in *McCreary County* and *Van Orden v. Perry,* 545 U.S. 677, 125 S.Ct. 2854, 162 L.Ed.2d 607 (2005), "did not settle the issue" and courts thus "remain in Establishment Clause purgatory." *Mercer County,* 432 F.3d at 636. Because neither recent Supreme Court case instructed otherwise, courts must continue to apply the *Lemon* test.

■ Under *Lemon's* endorsement test, courts must apply the objective observer standard and determine "whether *the* rea-

sonable person *would* conclude that Mercer County's display has the effect of endorsing religion." *Id.* at 636 (emphases in original) (citation omitted). In making this determination, "[c]ontext is crucial to this analysis." *Id.* Agreeing with the Seventh Circuit's analysis of an almost-identical display in *Books v. Elkhart County,* 401 F.3d 857 (7th Cir.2005) ("*Books II* "), the court concluded that the Ten Commandments were "part of an otherwise secular exhibit[,]" and they were not displayed any more prominently than any other document, all of which were "fundamental to American history." *Id.* at 637.

The Sixth Circuit rejected the ACLU's arguments, including repeated references to the need for a "separation of church and state," noting that "state recognition of religion that falls short of endorsement is constitutionally permissible." *Id.* at 639. As for the ACLU's focus on the "religiousness" of the Ten Commandments, the court noted that no one disputes this, but the argument ignores the Commandments' secular nature. The ACLU also wrongly equated "recognition" with "endorsement," and the Sixth Circuit noted that it would not "presume endorsement from the mere display of the Ten Commandments." *Id.* at 639.

The ACLU sought a rehearing *en banc,* which was ultimately denied. However, five judges dissented from the denial of the rehearing *en banc* and wrote a separate opinion as to why they would have struck down the Mercer County display. *ACLU v. Mercer County, Ky.,* 446 F.3d 651 (6th Cir.2006) (dissent).

## IV. ANALYSIS

With this background in mind, the Court turns to the present case. Before addressing the merits, however, the Court must first address two preliminary arguments

raised by the defendants: that the plaintiffs lack standing and that the case is not justiciable at this time.

## A. *Standing*

The defendants first argue that the three plaintiffs in this action—the ACLU, David Wilson, and Kenneth Tunnell—each lack standing to bring a challenge to the Foundations Display in the Garrard County courthouse. Because the considerations governing standing of individuals is different from that governing organizations, they are considered separately.

### 1. *Individual Standing*

■ The defendants argue that each of the individual plaintiffs, David Wilson and Kenneth Tunnell, lack standing because they have not been injured in a constitutionally material way with respect to the current Foundations Display. Regarding plaintiff Tunnell, he states that he has been offended by the 1999 Display, but there is nothing in the record regarding the Foundations Display, so it is unclear if he has even seen it. Regarding plaintiff David Wilson, he has at least testified that he has seen the Foundations Display and he does not like it, but the defendants argue that this injury is trivial and not constitutionally sufficient.

■ Under existing Supreme Court precedent, a party has standing if (1) he suffers an "injury in fact"; (2) the injury is "fairly traceable" to the challenged conduct; and (3) the injury is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). An "injury in fact" is defined as an "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560, 112 S.Ct. 2130.

In cases involving the Establishment Clause, the concept of standing and a concrete injury is somewhat elusive and the threshold for standing is a low one. In *Washegesic v. Bloomingdale Public Schools*, 33 F.3d 679 (6th Cir.1994), the Sixth Circuit held that a former student had standing to challenge a portrait of Jesus Christ that hung in the school hallway because he had "unwelcome direct contact with the offensive object" and that was enough. *Id.* at 682–83 (quotations and citations omitted). The fact that the student had graduated did not end the case:

> [T]he portrait does not affect students only—it potentially affects any member of the public who attends an event at the school. A member of the PTA or a member of the public would have standing if she attended events in the gymnasium and took the portrait as a serious insult to her religious sensibilities.... The relevant inquiry in this case is similar to that in any "public-facility" case: whether the individual plaintiff uses the facility and suffers actual injury.

*Id.* at 682 (citations omitted).[6] Other courts have held similarly. *See, e.g., Books II*, 401 F.3d at 862 (a plaintiff has standing where he "must come into direct and unwelcome contact with the religious

---

6. While the United States Supreme Court has held that "the psychological consequence presumably produced by observation of conduct with which one disagrees .... is not an injury sufficient to confer standing under Art[icle] III ... [,]" *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 485, 102 S.Ct.

752, 70 L.Ed.2d 700 (1982), this was a taxpayer standing case. As such, courts including the Sixth Circuit do not take this case "to stand for the proposition that psychological injury can *never* be a sufficient basis for the conferral of Article III standing." *ACLU of Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484 (6th Cir.2004).

display to participate fully as [a] citizen[ ] ... and to fulfill ... legal obligations") (quoting *Doe v. County of Montgomery*, 41 F.3d 1156, 1159 (7th Cir.1994)).

■ Similar to the plaintiff in *Washegesic*, the individual plaintiffs in the present case have standing with respect to all of the displays at issue in this case. Both plaintiffs either have had or must continue to have unwelcome direct contact with the display because it is located in a public facility where they must go to conduct county business.[7] Both plaintiffs have averred that the displays are offensive to them and that this offense derives from the inclusion of the Ten Commandments. Therefore, they have standing to contest any display of the Ten Commandments, whether it is the Foundations Display, the 1999 Display, or another display containing the Ten Commandments, so long as it hangs in the county courthouse. The case of *Washegesic* and other Sixth Circuit law does not seem to require much in order to confer standing, and these plaintiffs have made sufficient allegations to allege a constitutional injury.

Other Sixth Circuit cases support this conclusion. For example, in *Adland v. Russ*, 307 F.3d 471 (6th Cir.2002), the court held that plaintiffs who traveled to the Kentucky State Capitol to engage in political advocacy and *would* endure "direct and unwelcome contact with the Ten Commandments monument" had standing, even though the monument had yet to be erected and the plaintiffs had not actually seen the monument. *Id.* at 478 (noting that the injury is caused by the defendant's decision to erect the Ten Commandments and an injunction could redress the plaintiff's injury); *see also Baker v. Adams County/Ohio Valley School Bd.*, 86 Fed.

Appx. 104, 2004 WL 68523 (6th Cir. Jan.12, 2004) (same). Given that the plaintiffs in *Adland* had standing when they had never seen the monument at issue, the Court finds that the individual plaintiffs have standing in the present case.

### 2. Organizational Standing

■ The defendants also argue that the ACLU does not have standing in this matter because it refuses to disclose the name of any of its members in Garrard County. Thus, they argue, the court is unable to determine whether any ACLU members have seen and been offended by any of the displays. Based on this, the defendants argue, the ACLU has offered no evidence that any of its members have suffered a constitutional injury.

■ The ACLU may show it has organizational standing to sue on behalf of its members "when (a) its members otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977). In *Adland*, the Sixth Circuit held the following with respect to the ACLU's organizational standing:

First, various members of the American Civil Liberties Union travel to the Capitol, all of whom would come into direct, unwelcome contact with the monument. Second, according to a declaration attached to the complaint, the ACLU advocates the separation of church and state and has "devoted substantial effort

---

**7.** In the Sixth Circuit, "[a]n Establishment Clause plaintiff need not allege that he or she avoids, or will avoid, the area containing the

challenged display." *Adland v. Russ*, 307 F.3d 471, 478 (6th Cir.2002).

and resources to defending what Thomas Jefferson called 'the wall of separation between church and state' created by the two religion clauses of the First Amendment." Thus, this suit furthers the organization's interest. Third, there does not appear to be any basis to require the participation of all 1,800 Kentucky ACLU members. Accordingly, we find that the ACLU had organizational standing to seek relief in the district court.

*Adland*, 307 F.3d at 478–79. In *ACLU v. Ashbrook*, 375 F.3d 484 (6th Cir.2004), the court held that the ACLU had standing where it had identified a member who had and would continue to come into direct, unwelcome contact with the display at issue. *Id.* at 490–91.

In the present case, the ACLU has alleged in the complaint that it has over 90 members in Garrard County, members who must use the county courthouse to transact civic business and who thus have "occasion to view" the various Ten Commandments displays posted therein. While the complaint also says that "[e]ach *plaintiff* [i.e., including the ACLU] ... is offended by the continued displays," the complaint does not allege that an ACLU *member* has been so offended, nor does it identify such member.[8] In other words, while the complaint indicates that ACLU members will come into direct contact with the displays, it does not specify that any of its members have had or will come into *unwelcome* contact with the displays. The ACLU has refused to name its members in Garrard County and, while it is not required to name a specific member who has been or would be offended by the display, it must in the least allege that "a member" has been so offended. It is insufficient to

simply allege that the ACLU has members in Garrard County who come into contact with the display—the defendants are correct that membership in the ACLU does not equal opposition to Ten Commandments displays.

The *Adland* case can arguably be read broadly enough to confer organization standing on the ACLU, but, again, the Court finds that the complaint is not specific enough—it should at least state that at least one ACLU member (whether named or not) has had direct, *unwelcome* contact with the Ten Commandments display, and it does not go this far. The ACLU's organizational standing is derivative of its members' standing, or lack thereof. *See Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The case will go forward based on the other plaintiffs' standing, and the Court will give the ACLU the opportunity to amend its complaint to satisfy the standing requirement.

## B. *Justiciability/Mootness*

■ The defendants also argue that the case is moot because the only display discussed in the complaint is the 1999 Display, which the county has removed and replaced with the Foundations Display. Since the complaint does not mention the Foundations Display and the plaintiffs have not moved to amend to include discussion of the Foundations Display, the defendants argue that the challenged display no longer exists.

■ A case is moot when it is no longer "ongoing," or where the court is no longer capable of "affect[ing] the rights of litigants in the case before [it]." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477,

---

8. The defendants did not deny these particular allegations in their answer, so the Court considers them uncontested.

110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). The Court finds that the present case is justiciable because, as the Supreme Court has held, "voluntary cessation of allegedly illegal conduct ... does not make the case moot." *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Because there is nothing to stop Garrard County from erecting the 1999 Display again at any point in time, a live controversy still exists. Further, the county continues to maintain a display that includes the Ten Commandments, and it is this to which the plaintiffs object. Because the Ten Commandments continue to be part of the current display, the plaintiffs' objections and offense are presumed to continue.

### C. *Potential Fact Question Over Stand–Alone Posting of Ten Commandments*

 Before reaching the merits of the case, the Court must address a potential question of material fact involving the evolution of the current Foundations Display. *McCreary County* and *Mercer County* make clear that in determining whether a specific display passes constitutional muster, the Court must consider the history, evolution, and context of the display. Thus, it is directly relevant to the Court's analysis whether the Ten Commandments were ever posted alone in the Garrard County Courthouse. The complaint does not allege that the Ten Commandments were ever displayed alone, but the evidence has evolved to suggest this. At first blush, this appears to be a potential question of material fact, but upon closer analysis, this is a question that can be resolved at the summary judgment stage.

As noted above, the complaint does not allege a stand-alone display of the Ten

Commandments. However, at least three witnesses have testified that they recall a stand-alone copy of the Ten Commandments hanging in the Garrard County courthouse. County Magistrate Judges Marvin Conn and F.C. Foley testified that they recall seeing a stand-alone display at some point, but do not recall the details of how, when, or by whom it was posted or when it was taken down. Defendant E.J. Hasty, the County Judge–Executive, testified that there was a stand-alone display, but that it was replaced by the current Foundations Display, which the other facts do not support. Likewise, he does not recall details of how, when, or by whom this display was posted. Plaintiff Wilson was unsure whether there was a stand-alone display and two other County Magistrate Judges also could not recall.

Based on the above, there is affirmative evidence, although additional details are sketchy, that a stand-alone copy of the Ten Commandments hung in the Garrard County courthouse at some point in time and there is no evidence to the contrary. While the defendants argue that the existence of a stand-alone display is "not well attested by the evidence," they do not offer any evidence to contradict the testimony of the three witnesses who had personal knowledge of the existence of the stand-alone display. Thus, the Court does not see this as a fact question that would defeat summary judgment.[9]

### D. *Predominant Purpose under the Lemon Test*

Finally turning to the merits of the case, "[a]fter *McCreary County*, the first [prong of the *Lemon* test] is now the predominant purpose test...." *Mercer County*, 432 F.3d at 635. Accordingly, this Court must

---

9. Further, if the Court views the evidence in the light most favorable to the plaintiffs as the nonmoving party, the Court must conclude that there was, in fact, a stand-alone display.

first determine whether Garrard County acted with the ostensible and predominant purpose of advancing religion in posting the Ten Commandments as part of the Foundations Display. Garrard County concedes that both the 1999 Display and the Foundations Display are essentially identical to the second and third displays in *McCreary County* which, along with consideration of the first stand-alone display and the related history and context, the Supreme Court held unconstitutional. However, Garrard County argues that its display is constitutional because the predominant purpose of the display in this case is secular.

The displays at issue in *McCreary County* and *Mercer County* do not have the same evolutionary history as the display in the present case, and as we have learned from *McCreary County*, history and context matter in these cases. Therefore, while it certainly would be an easier course, the present matter cannot be resolved by simple application of either of those cases. Rather, the facts of the present case lie somewhere between the *McCreary County* and *Mercer County* cases.

■■■ Pursuant to *McCreary County*, "[t]he eyes that look to purpose belong to an objective observer," *McCreary County*, 545 U.S. at 862, 125 S.Ct. 2722, one who is "presumed to be familiar with the history of the government's actions[.]" *Id.* at 866, 125 S.Ct. 2722. We cannot look to the "veiled psyche of government officers" or "secret motives" of county officials and cannot undertake a "judicial psychoanalysis of a drafter's heart of hearts." *Id.* at 862–63, 125 S.Ct. 2722. It is because of this language that much of the deposition testimony cited by the plaintiffs is irrelevant and cannot be considered by the Court in determining the county's predominant purpose. The quoted testimony is just the sort of "secret motive" testimony that would require the Court to psychoanalyze county officials' "heart of hearts." Even if every member of the Fiscal Court personally and privately wanted to ensure that the Ten Commandments were placed on the walls of the courthouse for religious reasons, and later admitted this, the Court would be required to ignore these personal views unless they were somehow made available to the "objective observer" through some type of official act or when the individual was speaking in his or her official capacity. Thus, the Court has not considered any of this testimony in its analysis.[10]

**10.** While the Court agrees with the defendants' general contention that these "after the fact" statements are not relevant to the analysis, it does not agree with their broad assertion that only *contemporaneous* statements may be considered. Interestingly, the Sixth Circuit in *Mercer County* considered the affidavit of the County Judge–Executive, obviously written after the fact, and his statement therein that the purpose of the display was to recognize American legal traditions. This suggests that the "objective observer" may consider statements made by officials after the Ten Commandments are erected—even after litigation is filed. The Sixth Circuit noted that "[t]he only history the objective observer would incorporate into this display is the statement of Judge McGinnis [filed after the litigation was instituted] that the purpose of the display is to recognize American legal traditions." *Mercer County*, 432 F.3d at 631. The Court is not sure what to make of this, but in an abundance of caution, did not consider any of the county officials' post-litigation testimony when analyzing the "official acts" of the county.

Likewise, the Court disagrees with the defendants' characterization of the Pulaski County Judge–Executive's statements made at an installation ceremony as being "no more than part of Justice Souter's scene-setting." Public statements made by county officials in connection with a display are clearly part of the landscape that an objective observer would consider when contemplating the county's purpose.

The Supreme Court in *McCreary County* provided direction to the Court as to what government acts an "objective observer" may consider in deducing a county's purpose: the plain language of the enactment itself; any readily discoverable facts; traditional external signs in the text, legislative history, and implementation of the statute or other enactment; comparable official acts; context and contemporaneous legislative history; historical context of the enactment; the specific sequence of events leading to the enactment's passage; public comments of an enactment's sponsor; and other openly available data.[11]

In the present case, the only express public pronouncement of the county's stated purpose is found in its Resolution, wherein the county stated that it was its purpose, "in displaying these texts and symbols [in the Foundations Display], to increase our citizens' awareness of and appreciation for the rule of Law and its diverse historical sources." The Resolution also disclaimed any purpose or intent to promote or endorse any religious view, but simply to acknowledge some of the many influences that have "shaped our heritage[,]" and further reaffirmed the county's commitment to the free exercise of religion by all the county's citizens. The Resolution further stated that it was intended to clear up any "misunderstanding or misinterpretation" of its purpose with respect to earlier displays. While *McCreary County* counsels that a legislature's stated reasons for a particular action

usually get deference, "the secular purpose required has to be genuine, not a sham, and not merely secondary to a religious objective." *McCreary County*, 545 U.S. at 863, 125 S.Ct. 2722. Thus, the Court cannot only consider the county's stated purpose in isolation; if there is evidence that the stated purpose is a sham, the Court is not required to take it at face value.

Unlike the *Mercer County* case, where there was no evidence to suggest a religious objective, there is evidence in the present case to suggest that the officially-stated purpose in the Resolution is a sham. Looking only at the evidence available to an objective observer, the county first permitted a stand-alone copy of the Ten Commandments to remain in the courthouse for some unspecified period of time.[12] A display that sets out the text of the Commandments standing alone, not part of an arguably secular display, can only send one message: "[t]he reasonable observer could only think that the [county] meant to emphasize and celebrate the Commandments' religious message." *McCreary County*, 545 U.S. at 869, 125 S.Ct. 2722.

The next "official act" was approval in the minutes of a motion to erect the 1999 Display which, as described by the *McCreary County* court, "juxtapos[ed] the Commandments to other documents with highlighted references to God as their sole common element." *Id.* at 870, 125 S.Ct. 2722. The language of the minutes themselves potentially indicate a religious pur-

---

11. Based on the above, the Court will deny the plaintiffs' motion for leave to file supplemental exhibit [DE # 50]. The tendered exhibit is a political advertisement by defendant Hasty that attests to his personal views on the posting of the Ten Commandments and "his Christian values." Therein, he is speaking therein as a private candidate, not as an official of Garrard County and, therefore, these comments are irrelevant to the Court's analysis.

12. Although there is no evidence of an authorizing resolution or of the county ever affirmatively voting to post the Ten Commandments, it is reasonable to infer from the fact that the display remained on the walls of the courthouse for any amount of time that the county implicitly approved of the display.

pose. While they are not laced with religious statements or themes *per se*, they focus on the Ten Commandments to the exclusion of any other document in the display. For example, the heading of this section of the minutes reads "IN RE: POSTING OF TEN COMMANDMENTS." No other document in the 1999 Display is specifically mentioned; for example, the minutes do not refer to a posting of the "Mayflower Compact and other historical documents" or the "Passage from the Declaration of Independence and other historical documents." The remainder of the minutes likewise focus solely on the Ten Commandments and state that a citizen asked to allow the " 'Ten Commandments' as well as other historic documents" to be displayed; that the motion was for authority to post the "Ten Commandments, etc."; and that any other citizen had the right to post "the commandments and eight other historical documents...." Only the Ten Commandments are highlighted and mentioned specifically by name; the other documents are lumped together and generically referred to as "other historical documents." This suggests that the Ten Commandments were everyone's focus, including the county's, and is further evidence of a religious purpose.

As to the 1999 Display itself, the importance and message of the text of the Ten Commandments was lifted above that of the other documents by its placement in the center of the other documents and by its size, which was more than double that of the other documents. "The display's unstinting focus was on religious passages, showing that the [county was] posting the Commandments precisely because of their sectarian content." *Id.* at 870, 125 S.Ct. 2722. While there was no accompanying resolution similar to that in *McCreary County,* the message from the 1999 Display alone was sufficient to show an impermissible religious purpose.

The ACLU argues that the ceremony surrounding the posting of the 1999 Display is further evidence of a religious purpose. However, there is no evidence that it was planned or supported by the county; it appeared to have been privately organized and publicized. And while Christian prayers were spoken at the ceremony and county officials participated in those prayers, there is no evidence that any Garrard County official presided over the ceremony, led any prayer, or spoke at all. Although some county officials did attend, this was their right as private citizens— there is no evidence that any Magistrate Judges attended in his or her official capacity.

Continuing with the evolutionary history of the displays at issue, later minutes from the Fiscal Court also highlight the importance of the Ten Commandments over other documents in the 1999 Display. The minutes from an executive session of the Fiscal Court held almost immediately after suit was filed indicate that the county discussed the "Ten Commandments and historical documents display" and voted to allow "the current Ten Commandments to remain hanging...." Again, no specific mention was made of any of the other documents in the 1999 Display, indicating the heightened importance of the Ten Commandments to everyone involved.

Up until this point, then, the evidence shows that the county not only had a predominant religious purpose in posting the Ten Commandments and the 1999 Display, but that it was its *sole* purpose—the Court is simply unable to discern any other possible purpose in the official actions of the county. Based on the above, an objective observer in Garrard County has recent history of religiously-motivated governmental acts to incorporate into the present

Foundations Display. The defendants argue that the Resolution was an attempt to shake off any previous "misunderstanding or misinterpretation" of religious purpose. However, given the county's clear and unmistakable prior religious message, even the use of the words "misunderstanding or misinterpretation" in the Resolution seems disingenuous in that they suggest that an objective observer who read a religious purpose into the county's previous actions was either mistaken or dense—the Court's conclusion is that the objective observer would have been dense to think otherwise.

The real question is, has the county done what it takes to get it "right"? This requires the Court to determine whether there have been "genuine changes in constitutionally significant conditions" such that Garrard County has shaken off the taint of the previous unconstitutional displays. To paraphrase what one court within this circuit has stated, in order to post the Ten Commandments in the future in a constitutionally permissible manner, "*these* [Garrard] County Defendants must show that they have purged themselves of their original sectarian purpose relating to the posting of the Ten Commandments." *ACLU of Tn. v. Rutherford County, Tn.,* 2006 WL 2645198 (M.D.Tenn. Sept.14, 2006) (emphasis in original).

The courts do not provide any guidance on what these changes might consist of,[13] but the only evidence of any changed circumstances in the present case appears to be (1) the Resolution; and (2) the Foundations Display itself. The *Mercer County* court seems to suggest that the Foundations Display is facially valid, and if context and history were unknown to the objective observer, then that would be the end of the analysis. But we know that

context and history *must* be taken into account. So, as stated above, the Court is of the view that an objective observer would incorporate context and history into the present Foundations Display and conclude that the county had a predominantly religious purpose even in displaying the Foundations Display.

The Court does not consider the passage of the Resolution a "genuine change of constitutionally significant conditions" for several reasons. First and foremost is the timing of the passage of the Resolution. While the 1999 Display had remained in the courthouse for almost three years, the Resolution was passed approximately four days after this Court announced that it would likely find the Foundations Display in Mercer County constitutional. Thus, this stated purpose does not appear to be anything other than a mere litigation position, and certainly not a *genuine* change in circumstances. Second, as mentioned above, in the language of the Resolution itself, the county ignores its previous improper religious purposes. Rather than saying something along the lines of "*we* made a mistake with the earlier displays and we now want to correct our mistake and purge the display of any religious taint," the Resolution seems to disclaim any previous unconstitutional purpose by the county and instead suggests that it was the *objective observer* who was mistaken or somehow misinterpreted the county's purpose and intent. In light of the context, the Resolution seems implausible and disingenuous and insufficient to "cast off the objective so unmistakable in the earlier displays." *McCreary County,* 545 U.S. at 872, 125 S.Ct. 2722. In sum, in the Court's opinion, there is at least a fact question that the county's predominant purpose in

---

**13.** In *Rutherford County,* the district court suggests that one such change might be the election of new county officials.

erecting the Foundations Display was religious.

To be sure, there are differences between this case and the *McCreary County* case. No county funds were used to pay for the 1999 Display. The idea was apparently initiated by a citizen, not by county officials. There was no order to hang the Ten Commandments in a "high traffic area" of the courthouse. There were no overtly-religious speeches by county officials at the ceremony. There was no overtly-religious resolution accompanying the 1999 Display that spoke of Jesus Christ as the "Prince of Ethics" or used language similar to the resolution in *McCreary County,* a resolution that was never disclaimed even after the Foundations Display was erected. There *is* a resolution that expressly disclaims any religious purpose. However, despite these differences, there is sufficient evidence of the county's improper religious purpose in the extended history and evolution of the Garrard County display. Thus, the defendant's motion will be denied.

### E. *Effect*

 However, it is not enough to say that this case comes closer to *McCreary County* than *Mercer County* from a factual perspective. The Court must also consider the second prong of the *Lemon* test, "the so-called 'endorsement' test, [which] asks whether the government action has the purpose or effect of endorsing religion." *Mercer County,* 432 F.3d at 635 (citation omitted).

Under the endorsement test, the government violates the Establishment clause when it acts in a manner that a reasonable person would view as an endorsement of religion.... This is an objective standard, similar to the judicially-created "reasonable person" standard of tort law.... "Accordingly, we do not

ask whether there is *any* person who could find an endorsement of religion, whether *some* people may be offended by the display, or whether *some* reasonable person *might* think [the government] endorses religion.... Rather, the inquiry here is whether *the* reasonable person *would* conclude that [Garrard] County's display has the effect of endorsing religion".

*Id.* at 636 (citations omitted) (emphases in original). Again, "[c]ontext is crucial to this analysis." *Id.* at 637.

Based upon the analysis above, there is a fact question as to this prong, as well. Looking just at the Foundations Display alone, without regard to context and history, the Court finds that a reasonable person would conclude that it does *not* have the effect of endorsing religion, for the reasons stated in *Mercer County. Mercer County,* 432 F.3d at 637–38 (noting that all of the documents had a particular historical significance to the development of the country and that the documents were displayed in such a way that did not direct focus to any one particular document). Thus, the Foundations Display, absent consideration of the county's religious purposes in erecting it, does not have the primary effect of advancing or endorsing religion. However, given the history and context of the Foundations Display, there is at least a fact question as to whether a reasonable person would conclude that the county's display has the effect of endorsing religion.

## V. CONCLUSION

Based on the above, the Court will deny the defendant's motion for summary judgment. The plaintiffs have not moved for summary judgment, so the Court cannot enter judgment in their favor. However, it is unclear to the Court what additional defense evidence would be available at a

bench trial that has not already been provided in the motion; in other words, if no additional evidence is to be presented at a bench trial, then it seems the matter can be resolved by dispositive motions. Thus, the Court will require the parties to each file a brief status report to indicate how the Court should proceed in resolving the outstanding claims.

Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

(1) the motion of defendant Garrard County for summary judgment [DE # 44] is DENIED;

(2) the plaintiffs' motion for leave to file supplemental exhibit [DE # 50] is DENIED;

(3) no later than 15 days after the date of entry of this Order, plaintiff ACLU may amend its complaint to adequately allege organizational standing, as more fully explained herein; and

(4) no later than 15 days after the date of entry of this Order, each party shall file with the Court a status report not to exceed three pages (or the parties may file a joint report, if they prefer) indicating how the parties wish the Court to proceed to resolve the outstanding claims.