Berry BAKER and Anonymous Plaintiff # 1, Plaintiffs–Appellees,

v.

ADAMS COUNTY/OHIO VALLEY SCHOOL BOARD, Defendant–Appellant,

Kenneth W. Johnson, Thomas D. Claibourne, Ronald D. Stephens, and Douglas W. Ferguson, Intervening Defendants–Appellants.

Nos. 02–3776, 02–3777.

United States Court of Appeals, Sixth Circuit.

Jan. 12, 2004.

set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

The comprehensive opinion of Magistrate Judge Timothy Hogan provides a complete recitation of the facts. (By consent, the case was decided by a magistrate judge in the district court below.) Only the most pertinent facts are recounted here.

In 1997, the Board erected permanent stone monuments near the entrance of four new high schools within Adams County. Each monument had etchings of the American flag and an eagle on the sides, and bore the following inscription on biblical-looking tablets:

William R. Jacobs, Strauss & Troy, Cincinnati, OH, Raymond Vasvari, American Civil Liberties Union of Ohio Foundation, Cleveland, OH, for Plaintiffs–Appellees.

Danny R. Bubp, West Union, OH, Stephen M. Crampton, Brian Fahling, Tupelo, MS, for Intervenors–Appellants.

Charles Bronston McCord, Ennis, Roberts & Fischer, Cincinnati, OH, Francis J. Manion, New Hope, KY, for Defendant–Appellant.

Before NORRIS and GILMAN, Circuit Judges; and BUNNING, District Judge.*

### OPINION

GILMAN, Circuit Judge.

In the Fall of 1997, the Adams County/Ohio Valley School Board erected stone monuments inscribed with the Ten Commandments on the grounds of four newly constructed high schools. The Adams County Ministerial Association paid for the four monuments and agreed to indemnify the Board for any litigation expenses. County residents Berry Baker and an anonymous plaintiff sought an injunction against the Board, alleging that the display violated the Establishment Clause of the First Amendment to the United States Constitution. After the suit was commenced, the Board modified the display by adding monuments that included excerpts from the Justinian Code, the Preamble to the United States Constitution, the Declaration of Independence, and the Magna Carta. The district court granted summary judgment in favor of the plaintiffs and ordered the removal of the Ten Commandments monuments. For the reasons

THE TEN COMMANDMENTS

THOU SHALT HAVE NO OTHER GODS BEFORE ME

THOU SHALT NOT WORSHIP ANY GRAVEN IMAGE

THOU SHALT NOT TAKE GOD'S NAME IN VAIN

REMEMBER THE SABBATH TO KEEP IT HOLY

HONOR THY FATHER AND THY MOTHER

THOU SHALT NOT KILL

THOU SHALT NOT COMMIT ADULTERY

THOU SHALT NOT STEAL THOU SHALT NOT BEAR FALSE WITNESS

THOU SHALT NOT COVET

The Board's president spoke informally with each Board member before accepting

---

* The Honorable David Bunning, United States District Judge for the Eastern District of Kentucky, sitting by designation.

the donation of the four monuments from the Ministerial Association. No resolution or minutes document the action taken. After the monuments were erected, the Board adopted a resolution designating the area where the monuments stood as land upon which county residents could erect structures symbolic of local or national history. The Board subsequently installed signs indicating that no costs were borne by the Board and that no endorsement of religion was intended by the display.

On February 9, 1999, Baker and the anonymous plaintiff filed suit against the Board, alleging that the monuments violated the Establishment Clause of the First Amendment. The Board reacted by rescinding its earlier resolution and, on May 16, 2000, adopted a second resolution that read:

1. That the Adams County/Ohio Valley School Board has decided to create an educational display to inform Adams County high school students about some of the essential documents that the Board believes form the foundation of American law and government.

2. The Board believes it has the authority to create educational displays to further the knowledge and education of Adams County students.

3. The display will be entitled *Foundations of American Law and Government.*

4. It will consist of passages taken from five documents that the Board believes are essential to the foundations of this country's legal and governmental systems: (1) Preamble to the United States Constitution; (2) Declaration of Independence; (3) Magna Carta; (4) Justinian Code; (5) Ten Commandments.

5. Each document will be inscribed in stones coequal in size, shape, color, and substance. The stones will be positioned in a semi-circle and connected together to form a semi-circular wall.

6. Attached hereto is a true and correct copy of the current content of the *Foundations of American Law and Government* display, including the substance of each document to be inscribed and commentary regarding the document's importance to the foundations of American law and government.

7. The commentary will be inscribed on stone markers which will be positioned directly in front of each document.

8. This commentary will serve further to educate Adams County high school students regarding these documents' importance to the foundations of American law and government.

The Board, which had not previously articulated a secular reason for exhibiting the original Ten Commandments monuments, then surrounded each monument with four additional monuments of identical size to form a semi-circular wall with the Ten Commandments at the center. Two of the new monuments, placed to the left of the Ten Commandments, bore the following excerpts from the Justinian Code and the Declaration of Independence:

## JUSTINIAN CODE

NOW NATURAL LAWS WHICH ARE FOLLOWED BY ALL NATIONS ALIKE. DERIVING FROM DIVINE PROVIDENCE, REMAIN ALWAYS CONSTANT AND IMMUTABLE: BUT THOSE WHICH EACH STATE ESTABLISHES FOR ITSELF ARE LIABLE TO FREQUENT CHANGE WHETHER BY TACIT CONSENT OF THE PEOPLE OR BY SUBSEQUENT LEGISLATION. IT REMAINS TO CONSIDER THE DUTY OF A JUDGE. AND, IN THE FIRST PLACE. THE JUDGE MUST ENSURE THAT HE DOES NOT JUDGE CONTRARY TO STATUTES. CONSTITUTIONS AND CUSTOMS.

.    .    .    .    .

## DECLARATION OF INDEPENDENCE

WE HOLD THESE TRUTHS TO BE SELF–EVIDENT, THAT ALL MEN ARE CREATED EQUAL, THAT THEY ARE ENDOWED BY THEIR CREATOR WITH CERTAIN UNALIENABLE RIGHTS. THAT AMONG THESE ARE LIFE. LIBERTY, AND THE PURSUIT OF HAPPINESS. THAT TO SECURE THESE RIGHTS, GOVERNMENTS ARE INSTITUTED AMONG MEN, DERIVING THEIR JUST POWERS FROM THE CONSENT OF THE GOVERNED.

The other two monuments were placed to the right of the Ten Commandments and bore the following excerpts from the Preamble to the United States Constitution and the Magna Carta:

## PREAMBLE TO THE UNITED STATES CONSTITUTION

WE THE PEOPLE OF THE UNITED STATES, IN ORDER TO FORM A MORE PERFECT UNION, ESTABLISH JUSTICE. INSURE DOMESTIC TRANQUILITY, PROVIDE FOR THE COMMON DEFENSE. PROMOTE THE GENERAL WELFARE, AND SECURE THE BLESSINGS OF LIBERTY TO OURSELVES AND OUR POSTERITY. DO ORDAIN AND ESTABLISH THIS CONSTITUTION FOR THE UNITED STATES OF AMERICA.

.    .    .    .    .

## MAGNA CARTA

NO FREEMAN SHALL BE TAKEN OR IMPRISONED OR DISSEISED OR EXILED OR IN ANYWAY DESTROYED. NOR WILL WE GO UPON HIM NOR SEND UPON HIM, EXCEPT BY THE LAWFUL JUDGMENT OF HIS PEERS OR BY THE LAW OF THE LAND. MOREOVER, ALL THESE AFORESAID CUSTOMS AND LIBERTIES. THE OBSERVANCE OF WHICH WE HAVE GRANTED IN OUR KINGDOM AS FAR AS PERTAINS TO U.S. TOWARD OUR MEN, SHALL BE OBSERVED BY ALL OF OUR KINGDOM, AS WELL CLERGY AS LAYMAN. AS FAR AS PERTAINS TO THEM TOWARD THEIR MEN.

Finally, plaques were installed at the base of each monument. The plaque for the center monument read:

## THE TEN COMMANDMENTS

The Ten Commandments have profoundly influenced the formation of

Western legal thought and the formation of our country. That influence is clearly seen in the Declaration of Independence. This understanding of rights as God-given is rooted in the tradition of thought known as ethical monotheism. This is the belief–shared by Muslims. Jews, Christians, and others–in a Divine lawgiver who imposes upon earthly rulers a duty to recognize and respect each person's basic human rights and equal dignity. The Ten Commandments express the fundamental tenets of ethical monotheism. The Commandments remind us of our obligation to one another and to the Creator. They remind us that we owe one another respect. The Ten Commandments provide the moral background of the Declaration of Independence and the foundation of our legal tradition.

Comparable explanations were placed on plaques in front of the other four monuments. Despite these modifications to the original stand-alone display of the Ten Commandments monuments, the district court found that the display of the latter ran afoul of the purpose, effect, and entanglement prongs of the test set forth in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). It consequently ruled that the display violated the Establishment Clause of the First Amendment

## II. ANALYSIS

### A. Standard of review

We review a grant of summary judgment de novo. *Therma–Scan, Inc. v. Thermoscan, Inc.,* 295 F.3d 623, 629 (6th Cir.2002). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In considering a motion for summary judgment, the district court

must construe the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Standing

■ In order to meet Article III standing requirements, "a party must show (1) actual or threatened injury which is (2) fairly traceable to the challenged action and (3) a substantial likelihood the relief requested will redress or prevent the plaintiff's injury." *Adland v. Russ.* 307 F.3d 471, 477–78 (6th Cir.2002). In *Adland,* this court held that the plaintiffs satisfied the injury-in-fact requirement because they "frequently travel to the State Capitol to engage in political advocacy for a variety of organizations and ... will endure direct and unwelcome contact with the Ten Commandments monument [erected there]." *Id.* at 478. The factors identified by the district court in the present case are sufficient under *Adland* to satisfy the injury-in-fact component of Article III standing:

The Anonymous Plaintiff avers that during the time his/her child or children attended one of the high schools, he/she came into contact with the original Ten Commandments monument, and subsequently the new display, as a result of transporting his/her child to and from school and as parent participant or spectator at school events. Both plaintiffs claim that they pass at least one of the school buildings as part of their regular course of business in the community and

that the displays are visible from the road. Plaintiffs also claim that they come into direct contact with the displays as a consequence of attending sporting events, holiday shows, and theatrical performances at the high schools. Plaintiffs allege direct and unwelcome personal contact with the Ten Commandments monument display on public school property.

Furthermore, "this injury is plainly caused by the defendant's ... [decision] to erect the Ten Commandments and ... an injunction can redress plaintiffs' injury." *Adland.* 307 F.3d at 478. We therefore agree with the conclusion of the district court that the plaintiffs' averments are sufficient to confer standing for the purposes of this lawsuit.

**B. The "purpose prong" of the Lemon test**

■ In *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the Supreme Court held that Pennsylvania and Rhode Island statutes providing for state aid to church-related elementary and secondary schools violated the Establishment Clause of the First Amendment, which provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Establishment Clause has been applied to state and local governmental action through the Due Process Clause of the Fourteenth Amendment. *See Everson v. Bd. of Educ.*, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947) (noting that the Due Process Clause of the Fourteenth Amendment incorporates the Establishment Clause of the First Amendment).

A three-prong test was formulated in *Lemon* to evaluate Establishment Clause challenges to government action: (1) the action "must have a secular legislative purpose." (2) "its principal or primary effect must be one that neither advances nor inhibits religion." and (3) it must not foster "an excessive government entanglement with religion." *Lemon*, 403 U.S. at 612–13 (quotation marks and citations omitted). We are "bound to follow [the *Lemon*] test until the Supreme Court explicitly overrules or abandons it." *Adland*, 307 F.3d at 479.

The outcome of the present case is controlled by this court's recent decision in *ACLU v. McCreary County*, 354 F.3d 438 (6th Cir.2003) (*McCreary County*), which dealt with a nearly identical factual situation. In *McCreary County*, the court upheld a supplemental injunction prohibiting the exhibition of a modified display titled "The Foundations of American Law and Government." The supplemental injunction was granted on the heels of an earlier injunction prohibiting the county and its school board from exhibiting the Ten Commandments alone. In her concurring opinion, Judge Gibbons explained that there was a strong indication of improper purpose behind the modified display in light of:

(1) the inherently religious nature of the Ten Commandments, (2) defendants-appellants' failure to articulate a secular purpose until after litigation had commenced, (3) the "overtly religious" quality of the second display, (4) the absence of any evidence in the record indicating that the Ten Commandments have been or will be integrated into the school curriculum as part of an appropriate program of study, (5) the absence of any discussion integrating the Ten Commandments into a secular subject matter other than a conclusory assertion about the Declaration of Independence, and (6) the emphasis on the Ten Commandments as the only religious text in the displays[.]

*Id.* (Gibbons, J., concurring) (citations omitted) (numbers added). These same factors are manifested in the present case.

In particular, there is no evidence that the Ten Commandments monuments were originally erected with a secular purpose. The fact that the monument was donated by the Adams County Ministerial Association, a Christian religious organization that also agreed to indemnify the Board for any litigation expenses, implies the opposite. Furthermore, as the district court noted, "[t]here are no contemporaneous minutes, documents, or formal policy explaining the intent or purpose of the School Board in permitting the permanent placement of [the original] monoliths." The fact that the original displays contained only the Ten Commandments monuments "imprinted the defendants' purpose, from the beginning, with an unconstitutional taint...." *McCreary County* (quotation marks omitted).

Failing to set forth a secular explanation until after the litigation had commenced is a further indication that the purported secular justification was belatedly adopted solely to avoid Establishment Clause liability. *See id.* (citing *Adland,* 307 F.3d at 481). Furthermore, "the secular purpose requirement is not satisfied ... by the mere existence of some secular purpose, however dominated by religious purposes." *Id.* (quoting *Adland,* 307 F.3d at 480). In this regard, we note that even as the Board surrounded the Ten Commandments with four other stone monuments engraved with passages from selected historical documents, it added a plaque to the center of the display that stated, in part: "The Commandments remind us of our obligation to one another *and to the Creator.*" (Emphasis added.)

A failure to satisfy any one of the *Lemon* test's three prongs is fatal to government action that is being challenged on Establishment Clause grounds. *Edwards v. Aguillard,* 482 U.S. 578, 583, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987). Because the Board failed to satisfy the secular-purpose prong, we therefore have no need to address the second and third prongs of the *Lemon* test.

## III. CONCLUSION

For all the reasons set forth above, we **AFFIRM** the judgment of the district court.