**AMERICAN CIVIL LIBERTIES UNION OF KENTUCKY, et al., Plaintiffs**

v.

**ROWAN COUNTY, KENTUCKY, et al., Defendants.**

**Civil Action No. 01–220–KSF.**

United States District Court,
E.D. Kentucky,
Northern Division,
at Ashland.

Sept. 17, 2007.

David A. Friedman, Everett C. Hoffman, Priddy, Cutler, Miller & Meade, PLLC, Louisville, KY, for Plaintiffs.

David M. Corry, Erik W. Stanley, Mathew D. Staver, Stephen M. Crampton, Liberty Counsel, Lynchburg, VA, William W. Roberts, Morehead, KY, for Defendants.

## OPINION & ORDER

KARL S. FORESTER, Senior District Judge.

This matter is before the Court on the defendants' motion for summary judgment [DE # 51]. As with the case of *ACLU, et al. v. Garrard County, Ky.*, Civil No. 01–481–KSF, 517 F.Supp.2d 925, 2007 WL 2780987 (E.D.Ky.), this case asks the Court to determine whether, if a county gets it wrong in displaying the Ten Commandments, it can ever get it "right" such that it passes constitutional muster. This is also the question raised but not answered by the United States Supreme Court in *McCreary County, Ky. v. ACLU*, 545 U.S. 844, 125 S.Ct. 2722, 162 L.Ed.2d 729 (2005).

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In August of 1999, defendant Rowan County, Kentucky ("Rowan County"), acting through the Fiscal Court, voted to display in the Rowan County Fiscal Courtroom a copy of the Ten Commandments in response to a request of a local private citizen. There was no accompanying resolution, and the minutes do not reflect much more than the fact that the motion was made and passed:

> On motion of Jerry Flannery and seconded by Anna Pecco it is hereby ordered that the Ten Commandments be placed in the Fiscal Court Room (9″ × 11″). Said plaque will be provided by Doug Morgan and will be approved by the County Judge Executive prior to placement.

After approval by the County Judge Executive, the Ten Commandments were posted in the Fiscal Courtroom, which is on the second floor of the Judicial System building and is used primarily for Fiscal Court meetings, but is also occasionally used for other meetings and as a voting precinct. When the room is not in use, it is empty and the lights are turned off. When the commandments were posted, there was no ceremony, no county officials present, and no public statements made. No county funds were used to pay for the display nor its installation.

At the time, the Ten Commandments were posted among a number of other miscellaneous documents on the wall of the Fiscal Courtroom. These included pictures relating to the history of Rowan County and awards and recognitions received by the county. There appear to

have been approximately seventeen (17) other documents, each roughly the same size, and the copy of the Ten Commandments was approximately the same size as the other documents.

Over two years later on November 27, 2001, plaintiff American Civil Liberties Union of Kentucky ("ACLU") and other individual plaintiffs filed the present suit objecting to the display of the Ten Commandments. They filed a motion for a preliminary injunction on December 17, 2001, asking that the Ten Commandments be removed. The next day, the Rowan County Fiscal Court met in a closed session "to discussion pending litigation." No action was taken, but the Fiscal Court thereafter as part of their open session authorized the posting of a display identical to a display posted in Mercer County and referred to as the "Foundations of American Law and Government" display:[1]

> On motion of Jerry Flannery and seconded by Anna Pecco it is hereby ordered that a resolution of the Fiscal Court of Rowan County whereas the Rowan County Fiscal Court desires to educate and provide all of its citizens with information concerning the Foundations of American Law and Government be adopted. Copy on file in Clerk's office.

This display included the following documents:

- A copy of the Mayflower Compact;
- A copy of the Declaration of Independence;
- A copy of the King James version of the Ten Commandments;
- A copy of the Magna Carta;
- The lyrics of the Star Spangled Banner;

- The national motto, "In God We Trust";
- A copy of the preamble to the Kentucky Constitution;
- A copy of the Bill of Rights; and
- A picture of Lady Justice

(hereinafter collectively referred to as the "Foundations Display"). The documents in the Foundations Display were all of the same size and each was accompanied by a statement describing its historical and legal significance. The resolution indicated that the county's purpose in hanging the Foundations Display was "to educate and provide all of its citizens with information concerning the Foundations of American Law and Government" and authorized the Foundations Display to be erected "upon the walls of the Rowan County Courthouse" (hereinafter referred to as the "Resolution").

The prior copy of the Ten Commandments was removed and the Foundations Display was hung in the Fiscal Courtroom on the wall directly behind the table where the Fiscal Court members sit. Again, there was no ceremony, no county officials present, and no public statements made. No county money was used for the display or its installation.

A hearing on the plaintiffs' motion for preliminary injunction was held on August 22, 2002. At that time, the Court also heard arguments on two other cases involving the posting of the Ten Commandments in county courthouses in Garrard and Mercer counties. The Court took the motions under advisement, but indicated from the bench that it would likely allow the Mercer County display—also a "Foundations Display"—to remain.[2]

---

1. The parties agree this display is identical to the third display in *McCreary County* and the first and only display in *ACLU v. Mercer County, Ky.,* 432 F.3d 624 (6th Cir.2005).

2. The Foundations Display in the Mercer County case was the one and only display posted in the Mercer County courthouse.

On September 10, 2002, the Court denied the plaintiffs' preliminary injunction motion and stayed all proceedings pending a decision in the *McCreary County* case, which at that time was before the Sixth Circuit. The plaintiffs again filed a motion for preliminary injunction in early 2003, which the Court denied without prejudice to refile when the case was reopened. This matter remained stayed until the United States Supreme Court issued its decision in *McCreary County* on June 26, 2005. Thereafter, the Court held a status conference and discovery was reopened on January 13, 2006. In the meantime, the Sixth Circuit issued a decision in the *Mercer County* case, affirming this Court's ruling denying the motion for preliminary injunction in that case. After a telephone status conference during the summer of 2006, the Court filed a dispositive motion schedule and the present motion followed.

## II. STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir.1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S.Ct. 2505. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. DECISIONS IN *McCREARY COUNTY* AND *MERCER COUNTY*

The parties agree that the present case is governed by the United States Supreme Court decision in *McCreary County, Ky. v. ACLU*, 545 U.S. 844, 125 S.Ct. 2722, 162 L.Ed.2d 729 (2005), and the Sixth Circuit's opinion in *ACLU v. Mercer County, Ky.*, 432 F.3d 624 (6th Cir.2005). There is much in these cases for both sides to rely on in support of their respective arguments.

### A. *McCreary County*

The *McCreary County* case involved courthouse displays in McCreary and Pulaski counties. McCreary County posted a large stand-alone copy of the Ten Commandments on the courthouse walls in response to an order of the Fiscal Court requiring the display to be posted in "a very high traffic area" of the courthouse.

*McCreary County,* 545 U.S. at 851, 125 S.Ct. 2722. In Pulaski County, a similar display was erected in a ceremony presided over by the County Judge–Executive, who called the Ten Commandments "good rules to live by" and noted that astronauts were convinced "there must be a divine God" after viewing the Earth from the moon. *Id.* The Pulaski County Judge–Executive was accompanied by his local pastor, who said the Ten Commandments were a "creed of ethics" and who later told the press that displaying the Commandments was "one of the greatest things the judge could have done to close out the millennium." *Id.*

The ACLU sued the counties in federal court and sought a preliminary injunction to remove the offending displays. Before the court could rule on the request for an injunction, both counties enacted resolutions ordering that expanded displays be erected.[3] The largely identical county resolutions made several references to the Ten Commandments, Alabama Judge Roy Moore, and Jesus Christ as the "Prince of Ethics." *Id.* at 852–53, 125 S.Ct. 2722. A copy of the resolution was posted with each expanded display.

Following the test set forth in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the district court or-dered that the displays be removed, finding that the original display lacked any secular purpose and that the expanded display also clearly lacked a secular purpose because of the counties' narrow tailoring of documents "to incorporate only those with specific references to Christianity." *Id.* 545 U.S. at 854–55, 125 S.Ct. 2722.

After hiring new counsel, the counties erected a third display identical to the Foundations Display in the present case. There were no resolutions accompanying this display and the previous resolutions were not repealed by the counties. *Id.* at 855–56, 125 S.Ct. 2722. The ACLU again moved for a preliminary injunction with respect to the third display and the district court granted the motion, noting that the Ten Commandments' foundational value was a religious, rather than a secular, purpose. Based on the history of the litigation, the district court rejected the new assertion that the counties had broader educational goals. *Id.* at 857, 125 S.Ct. 2722. Ultimately, the district court determined that the counties' clear purpose was to post the Ten Commandments, not to educate its citizens. *Id.* A divided panel of the Sixth Circuit affirmed and the United States Supreme Court ultimately granted certiorari and affirmed by a vote of 5–4.[4]

---

3. These expanded displays included a large copy of the edited King James version of the Ten Commandments; the passage from the Declaration of Independence including the phrase that men are "endowed by their Creator" with certain rights; the preamble to the Kentucky Constitution; the national motto, "In God We Trust"; a page from the Congressional Record of February 2, 1983, proclaiming the Year of the Bible and including a statement of the Ten Commandments; a proclamation by President Abraham Lincoln designating April 30, 1863, a national Day of Prayer and Humiliation; an excerpt from President Lincoln's "Reply to Loyal Colored People of Baltimore upon Presentation of a Bible," which reads that "[t]he Bible is the best gift God has ever given to man"; a proclamation by President Ronald Reagan marking 1983 as the "Year of the Bible"; and a copy of the Mayflower Compact. The copy of the Ten Commandments was in the center and was several times larger than the other documents, which were of equal size.

4. A word about the procedural posture of that case is in order. The *McCreary County* case came to the Supreme Court on appeal from a preliminary injunction. Thus, the Court reviewed the district court's conclusion—the ACLU's likelihood of success on the merits—for abuse of discretion. The Supreme Court did not pass upon the ultimate merits of the case. Despite the different procedural postures, there is sufficient guidance and di-

While many commentators saw *McCreary County* as a chance for the Supreme Court to abandon the oft-criticized *Lemon* test, the *Lemon* test survived relatively unscathed. The Court reiterated that "[t]he touchstone for [the] analysis is the principle that the 'First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion.'" *Id.* at 860, 125 S.Ct. 2722 (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968)). A government violates the Establishment Clause when it "acts with the ostensible and predominant purpose of advancing religion...." *Id.*

The Supreme Court specifically rejected the counties' call to abandon the purpose test of *Lemon*, noting that "[e]xamination of purpose is a staple of statutory interpretation that makes up the daily fare of every appellate court in the country ... and governmental purpose is a key element of a good deal of constitutional doctrine...." *Id.* at 861, 125 S.Ct. 2722. However, the Court noted that while *Lemon's* "secular legislative purpose" inquiry has been a common element of its Establishment Clause cases, this element has seldom been dispositive. *Id.* at 859, 125 S.Ct. 2722.

After giving lower courts direction in what to look for in determining purpose, the Supreme Court next rejected the counties' arguments that "any transparent claim to secularity" would satisfy the purpose element, without regard to context or history. Noting that while "a legislature's stated reasons will generally get deference, the secular purpose required has to be genuine, not a sham, and not merely secondary to a religious objective." *Id.* at 864, 125 S.Ct. 2722. Thus, "in those unusual cases where the claim [is] an apparent sham, or the secular purpose second-

ary," the Supreme Court suggests that it is the lower court's duty to question that claim. *Id.* at 865, 125 S.Ct. 2722.

In determining purpose, the Supreme Court provides the following guidance:

[A]n understanding of official objective emerges from readily discoverable fact, without any judicial psychoanalysis of a drafter's heart of hearts.... The eyes that look to purpose belong to an "'objective observer,'" one who takes account of the traditional external signs that show up in the "'text, legislative history, and implementation of the statute,'" or comparable official act.

*Id.* at 862, 125 S.Ct. 2722 (citations omitted). The Supreme Court also counsels that courts must look to "openly available data" of a legislature's purpose, and cannot "look to the veiled psyche of government officers...." *Id.* at 863, 125 S.Ct. 2722. Any personal religious intent that is disguised so cleverly that an objective observer cannot discern it "is no reason for great constitutional concern." *Id.*

So, despite a county's claim of a secular purpose, "the world is not made brand new every morning," *id.* at 866, 125 S.Ct. 2722, and so the objective observer does not consider only the "latest news about the last in a series of governmental action, however close they may all be in time and subject." *Id.* Rather, the objective observer is one who is "presumed to be familiar with the history of the government's actions and competent to learn what history has to show." *Id.* Thus, the objective observer "in the endorsement inquiry must be deemed aware of the history and context of the community and forum in which the religious display appears[.]" *Id.* (citation and quotations omitted). The Supreme Court recognizes that this necessar-

---

rection provided by the Supreme Court to apply the principles set forth in *McCreary*

*County* to the present case, keeping in mind the higher summary judgment standard.

ily means that identical displays may be treated differently under an Establishment Clause analysis.

> Just as Holmes's dog could tell the difference between being kicked and being stumbled over, it will matter to objective observers whether posting the Commandments follows on the heels of displays motivated by sectarianism, or whether it lacks a history demonstrating that purpose.... [W]here one display has a history manifesting sectarian purpose that the other lacks, it is appropriate that they be treated differently, for the one display will be properly understood as demonstrating a preference for one group of religious believers as against another.

*Id.* at 866 n. 14, 125 S.Ct. 2722 (citation omitted).

Considering the context and history of the displays at issue, the Supreme Court noted that a similar display rejected in *Stone v. Graham*, 449 U.S. 39, 101 S.Ct. 192, 66 L.Ed.2d 199 (1980), "had no context that might have indicated an object beyond the religious character of the text, and the Counties' solo exhibit in *McCreary County* did nothing more to counter the sectarian implication than the postings at issue in *Stone.*" *Id.* at 868, 125 S.Ct. 2722. Further with regard to the first display, the Supreme Court recognized the secular influence of the Ten Commandments, but also stated the following:

> The point is simply that the original text viewed in its entirety is an unmistakably religious statement dealing with religious obligations and with morality subject to religious sanction. When the government initiates an effort to place this statement alone in public view, a religious object is unmistakable.

*Id.* at 869, 125 S.Ct. 2722.

With respect to the second display, which the counties erected after they were sued, the Supreme Court noted that the display

> juxtapos[ed] the Commandments to other documents with highlighted references to God as their sole common element. The display's unstinting focus was on religious passages, showing that the Counties were posting the commandments precisely because of their sectarian content. That demonstration of the government's objective was enhanced by serial religious references and the accompanying resolution's claim about the embodiment of ethics in Christ. Together, the display and resolution presented an indisputable, and undisputed, showing of an impermissible purpose.

*Id.* at 870, 125 S.Ct. 2722. While the counties described this display as "dead and buried," the Supreme Court noted that "the reasonable observer could not forget it." *Id.*

As to the third or "Foundations Display," the Supreme Court noted that the counties had offered several new purposes for the third version, one of which was a desire to educate its citizens (similar to the purpose set forth in the Resolution in the present case). However, the counties had never repealed the resolutions passed in connection with the second displays nor repudiated them in any way, and had not taken any further authorizing action with respect to these new purposes. Therefore, the Supreme Court saw the "desire to educate" as being presented "only as a litigating position." *Id.* at 871–72, 125 S.Ct. 2722. Given the context and history, the Supreme Court concluded that "[n]o reasonable observer could swallow the claim that the Counties had cast off the objective so unmistakable in the earlier displays."[5] The Supreme Court also criti-

---

**5.** It seems a bit contradictory for the Supreme Court to be making this strong of a finding on what seems to be the merits of the case when it was presented only as an appeal from a preliminary injunction. The Supreme Court

cized the selection of the posted materials in the Foundations Display as "odd," "baffling," and "perplexing." *Id.* at 872–73, 125 S.Ct. 2722.

What did the Supreme Court say about changed circumstances? Relevant to this case, once a county has gotten it wrong, can it ever get it right? The Supreme Court seems to have answered this question in the affirmative:

> [W]e do not decide that the Counties' past actions forever taint any effort on their part to deal with the subject matter. We hold only that purpose needs to be taken seriously under the Establishment Clause and needs to be understood in light of context; an implausible claim that governmental purpose has changed should not carry the day in a court of law any more than in a head with common sense. It is enough to say here that district courts are fully capable of adjusting preliminary relief to take account of genuine changes in constitutionally significant conditions.

*Id.* at 873–74, 125 S.Ct. 2722. Thus, even counties such as McCreary and Pulaski, with such an overtly religious purpose in the past, may "get it right" at some point in the future, based on genuine changes in constitutionally significant conditions. Of course, the Supreme Court provides no guidance as to what might constitute these "genuine changes" or "constitutionally significant conditions," so the lower courts are left to make that determination themselves.

In discussing the dissent, the Supreme Court stressed "the importance of neutrality as an interpretive guide[:]"

> Given the variety of interpretative problems, the principle of neutrality has

provided a good sense of direction: the government may not favor one religion over another, or religion over irreligion, religious choice being the prerogative of individuals under the Free Exercise Clause.

*Id.* at 874–75, 125 S.Ct. 2722. Given the "divisiveness of religion in current public life[,] … [t]his is no time to deny the prudence of understanding the Establishment Clause to require the Government to stay neutral on religious belief, which is reserved for the conscience of the individual." *Id.* at 881, 125 S.Ct. 2722.

## B. *Mercer County*

In late 2005, the Sixth Circuit decided another pending Ten Commandments case, *ACLU v. Mercer County, Ky.,* 432 F.3d 624 (6th Cir.2005), that had been stayed pending a decision in *McCreary County.* The *Mercer County* case involved one and only one display. In 2001, a Mercer County resident requested permission to hang in the Mercer County courthouse a display identical to the Foundations Display at issue herein. The Fiscal Court, aware "that the Kentucky General Assembly had recently passed a resolution authorizing the inclusion of the Ten Commandments in displays of formative, historical documents on government property," *id.* at 626, voted in favor of the request. No county funds were used in connection with the display. There apparently was no additional resolution nor any ceremony solemnized by a clergyman held when the display was erected.

Shortly thereafter, the ACLU filed suit in this Court[6] and sought a preliminary injunction, and the county moved for summary judgment. After a hearing on the

---

seemed to go farther than necessary given the procedural posture of the case.

**6.** The complaint in the *Mercer County* case was filed on the same day as the complaint in

the present case and the complaint in *ACLU v. Garrard County,* Civil No. 01–481–KSF, —— F.Supp.2d ——, 2007 WL 2780987 (E.D.Ky.) (pending separately).

motions, this Court indicated from the bench that it was going to deny the motion for preliminary injunction based on application of the *Lemon* test. In a later written opinion, this Court found that "Mercer County's stated secular purpose—recognition of the historical significance of the documents included in the display—was not a sham." *Id.* Because there was nothing in the legislative history indicating religious purpose, this Court held that Mercer County had a secular purpose in erecting the display. This court also held that "the reasonable person would not view the display as an endorsement of religion." *Id.* at 627–28. After allowing time for limited discovery, the Court granted the county's motion for summary judgment and dismissed the ACLU's claims with prejudice. The ACLU appealed and the case was argued to a panel of the Sixth Circuit. Thereafter, the United States Supreme Court granted certiorari in *McCreary County,* so the case was stayed.

After supplemental briefing, the Sixth Circuit affirmed the district court's rulings. It first analyzed the display under *McCreary County* and agreed with Mercer County officials that "the predominant purpose of the display in this case [was] secular." *Id.* at 631. Contrasting the history of the lone Mercer County display with the history of the multiple displays in *McCreary County,* the Sixth Circuit noted that the Mercer County display "lack[ed] a similar sectarian pedigree. Here, there was only one display, one authorizing measure, and one implementation, all of which demonstrate[d] a secular purpose." *Id.*

Noting that courts defer to the stated governmental purpose except "in *unusual* cases where the claim was an apparent sham," *id.* at 632–33 (emphasis in original), the Sixth Circuit found that this was not one of those cases. Rather, the county's stated purpose was supported by objective evidence and context. Thus, the Sixth Circuit concluded "[a] reasonable objective observer would not view this display as an attempt by Mercer County to establish religion. Instead, he would view it for what it is: an acknowledgment of history." *Id.* at 632.

The court found that there was no evidence that the stated purpose was a sham. By way of example, the Sixth Circuit noted the following:

> The Mercer County display was neither immediately preceded by nor invariably connected to previous unconstitutional displays. As the district court said, "the Commandments were displayed in a proper historical context *ab initio,*" untainted by previous impermissible attempts to exhibit the Decalogue like those that proved fatal in *McCreary County.* The objective observer in Mercer County has no recent history of religiously motivated governmental acts or resolutions to incorporate into the display. We conclude therefore, that the predominant purpose of the "Foundations" display is secular.

*Id.* (citations and footnote omitted). The Sixth Circuit, like the Supreme Court in *McCreary County,* recognized that "identical displays may nonetheless be constitutionally unique[.]" *Id.*

The Sixth Circuit also noted that Mercer County had authorized the posting of the Foundations Display "in an attempt to recognize American legal history." *Id.* at 632. Because there was nothing to suggest a predominantly religious message, it did not run afoul of the Establishment Clause. As for the specific documents chosen by the county, the Sixth Circuit was "not persuaded by comments indicating that the Supreme Court would have posted a different display." *Id.* at 633 n. 7. "What five justices of the Supreme Court would include in a display commemorating Kentucky and

American legal history has no bearing on the constitutionality of the display as erected[,]" according to the Sixth Circuit. *Id.*

After determining that the Foundations Display in Mercer County survived scrutiny under *McCreary County,* the Sixth Circuit then proceeded to determine whether any additional scrutiny was warranted under the *Lemon* test. It noted that while "*Lemon* has been criticized by a number of Supreme Court justices[,]" the Supreme Court's decision in *McCreary County* and *Van Orden v. Perry,* 545 U.S. 677, 125 S.Ct. 2854, 162 L.Ed.2d 607 (2005), "did not settle the issue" and courts thus "remain in Establishment Clause purgatory." *Mercer County,* 432 F.3d at 636. Because neither recent Supreme Court case instructed otherwise, courts must continue to apply the *Lemon* test.

Under *Lemon's* endorsement test, courts must apply the objective observer standard and determine "whether *the* reasonable person *would* conclude that Mercer County's display has the effect of endorsing religion." *Id.* at 636 (emphases in original) (citation omitted). In making this determination, "[c]ontext is crucial to this analysis." *Id.* Agreeing with the Seventh Circuit's analysis of an essentially identical display in *Books v. Elkhart County,* 401 F.3d 857 (7th Cir.2005) ("*Books II* "), the court concluded that the Ten Commandments were "part of an otherwise secular exhibit[,]" and they were not displayed any more prominently than any other document, all of which were "fundamental to American history." *Id.* at 637.

The Sixth Circuit rejected the ACLU's arguments, including repeated references to the need for a "separation of church and state," noting that "state recognition of religion that falls short of endorsement is constitutionally permissible." *Id.* at 639. As for the ACLU's focus on the religiousness of the Ten Commandments, the court

noted that no one disputes this, but the argument ignores the Commandments' secular nature. The ACLU also wrongly equated "recognition" with "endorsement," and the court noted that it would not "presume endorsement from the mere display of the Ten Commandments." *Id.* at 639.

The ACLU sought a rehearing *en banc,* which was ultimately denied. However, five judges dissented from the denial of the rehearing *en banc* and wrote separately to discuss why they would have struck down the Mercer County display. *ACLU v. Mercer County, Ky.,* 446 F.3d 651 (6th Cir.2006) (dissent).

## IV. ANALYSIS

With this background in mind, the Court turns to the present case. Before addressing the merits, however, the Court must first address two arguments raised by the defendants: that the plaintiffs lack standing and that the case is not justiciable at this time.

### A. *Standing*

■ The defendants argue that the plaintiffs in this action lack standing to bring a challenge to the Foundations Display in the Rowan County courthouse. Specifically, the defendants argue that the plaintiffs lack standing because they have not been injured in a constitutionally material way with respect to the current Foundations Display. The plaintiffs allege that when using the courthouse, they "have occasion" to view the Ten Commandments and object to them. There is nothing in the record regarding the Foundations Display, so it is unclear whether the plaintiffs have even seen it. They do not allege that they avoid the courthouse or have been driven from it. The defendants argue that this injury is trivial and not constitutionally sufficient.

Under existing Supreme Court precedent, a party has standing if (1) he suffers an "injury in fact"; (2) the injury is "fairly traceable" to the challenged conduct; and (3) the injury is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). An "injury in fact" is defined as an "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560, 112 S.Ct. 2130.

■ In cases involving the Establishment Clause, the concept of standing and a concrete injury is somewhat elusive and the threshold for standing is a low one. In *Washegesic v. Bloomingdale Public Schools*, 33 F.3d 679 (6th Cir.1994), the Sixth Circuit held that a former student had standing to challenge a portrait of Jesus Christ that hung in the school hallway because he had "unwelcome direct contact with the offensive object" and that was enough. *Id.* at 682–83 (quotations and citations omitted). The fact that the student had graduated did not end the case:

> [T]he portrait does not affect students only—it potentially affects any member of the public who attends an event at the school. A member of the PTA or a member of the public would have standing if she attended events in the gymnasium and took the portrait as a serious insult to her religious sensibilities.... The relevant inquiry in this case is similar to that in any "public-facility" case:

whether the individual plaintiff uses the facility and suffers actual injury. *Id.* at 682 (citations omitted).[7] Other courts have held similarly. *See, e.g., Books II*, 401 F.3d at 862 (a plaintiff has standing where he "must come into direct and unwelcome contact with the religious display to participate fully as [a] citizen[ ] ... and to fulfill ... legal obligations") (quoting *Doe v. County of Montgomery*, 41 F.3d 1156, 1159 (7th Cir.1994)).

Similar to the plaintiff in *Washegesic*, the plaintiffs in the present case have standing with respect to both of the displays at issue in this case. The plaintiffs either have had or must continue to have unwelcome direct contact with the display because it is located in a public facility where they must go to conduct county business.[8] The plaintiffs have averred that the display is offensive to them and that this offense derives from the inclusion of the Ten Commandments. Therefore, they have standing to contest Rowan County's display of the Ten Commandments, whether it is the Foundations Display or another display containing the Ten Commandments, so long as it hangs in the county courthouse. The case of *Washegesic* and other Sixth Circuit law does not seem to require much in order to confer standing, and these plaintiffs have made sufficient allegations to allege a constitutional injury.

Other Sixth Circuit cases support this conclusion. For example, in *Adland v.*

---

**7.** While the United States Supreme Court has held that "the psychological consequence presumably produced by observation of conduct with which one disagrees .... is not an injury sufficient to confer standing under Art[icle] III ... []" *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 485, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982), this was a taxpayer standing case. As such, courts including the Sixth Circuit do not take this case "to

stand for the proposition that psychological injury can *never* be a sufficient basis for the conferral of Article III standing." *ACLU of Ohio Found., Inc. v. Ashbrook*, 375 F.3d 484 (6th Cir.2004).

**8.** In the Sixth Circuit, "[a]n Establishment Clause plaintiff need not allege that he or she avoids, or will avoid, the area containing the challenged display." *Adland v. Russ*, 307 F.3d 471, 478 (6th Cir.2002).

*Russ,* 307 F.3d 471 (6th Cir.2002), the court held that plaintiffs who traveled to the Kentucky State Capitol to engage in political advocacy and *would* endure "direct and unwelcome contact with the Ten Commandments monument" had standing, even though monument had yet to be erected and the plaintiffs had not actually seen the monument. *Id.* at 478 (noting that the injury is caused by the defendant's decision to erect the Ten Commandments and an injunction could redress the plaintiff's injury); *see also Baker v. Adams County/Ohio Valley School Bd.,* 86 Fed. Appx. 104 (6th Cir.2004) (same). Given that the plaintiffs in *Adland* had standing when they had never seen the monument at issue, the Court finds that the plaintiffs have standing in the present case.[9]

**B.  *Justiciability/Mootness***

■ The defendants argue that the case is moot because the only display discussed in the complaint is the display of the Ten Commandments, which the county has removed and replaced with the Foundations Display. Since the complaint does not mention the Foundations Display and the plaintiffs have not moved to amend to include a discussion of the Foundations Display, the defendants argue that the challenged display no longer exists and the case is moot.

■ A case is moot when it is no longer "ongoing," or where the court is no longer capable of "affect[ing] the rights of litigants in the case before [it]." *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). The present case is justiciable because, as the Supreme Court has held, "voluntary cessation of allegedly illegal conduct . . . does not make the case moot." *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

Although the Foundations Display has now hung for over five years, there is nothing to stop Rowan County from changing the display at any point in time; therefore, a live controversy still exists. Further, the county continues to maintain a display that includes the Ten Commandments and it is this to which the plaintiffs object. Because the Ten Commandments continues to be part of the current display, the plaintiffs' objections and offense are presumed to continue.

**C.  *Predominant Purpose under the Lemon Test***

■ Turning to the merits of the case, "[a]fter *McCreary County,* the first [prong of the *Lemon* test] is now the predominant purpose test. . . ." *Mercer County,* 432 F.3d at 635. Accordingly, this Court must first determine whether Rowan County acted with the ostensible and predominant purpose of advancing religion in posting the Ten Commandments as part of the Foundations Display. The parties agree that the Foundations Display is essentially identical to the display in *Mercer County* which, along with consideration of the related history and context, the Sixth Circuit held constitutional, and the third display in *McCreary County,* which the Supreme Court held to be *un*constitutional. Rowan County argues that its Foundations Display should be upheld under *Mercer County.*

The displays at issue in *McCreary County* and *Mercer County* do not have the same evolutionary history as the display in the present case, and as we have learned from *McCreary County,* history and context matter in these cases. Therefore, while it certainly would be an easier course, the present matter cannot be resolved by simple application of either of

---

9.  The defendants' reliance on the dissent in *Books II* is neither the law of this circuit nor is it the law of the Seventh Circuit and, therefore, does not change the Court's opinion.

those cases. Rather, the facts of the present case lie somewhere between the *McCreary County* and *Mercer County* cases.

■■ Pursuant to *McCreary County,* "[t]he eyes that look to purpose belong to an objective observer," *McCreary County,* 545 U.S. at 862, 125 S.Ct. 2722, one who is "presumed to be familiar with the history of the government's actions[.]" *Id.* at 866, 125 S.Ct. 2722. We cannot look to the "veiled psyche of government officers" or "secret motives" of county officials and cannot undertake a "judicial psychoanalysis of a drafter's heart of hearts." *Id.* at 862–63, 125 S.Ct. 2722. It is because of this language that much of the testimony cited by the plaintiffs is irrelevant and cannot be considered by the Court in determining the county's predominant purpose. The quoted testimony is just the sort of "secret motive" testimony that would require the Court to psychoanalyze county officials' "heart of hearts." Even if every member of the Fiscal Court personally and privately wanted to ensure that the Ten Commandments were placed on the walls of the courthouse for religious reasons, and later admitted as much, the Court would be required to ignore these personal views unless they were somehow made available to the "objective observer" through some type of official act or when the individual was speaking in his or her official capacity. Thus, the Court has not considered any of this testimony in its analysis. This includes testimony to the effect that the Resolution accompanying the Foundations Display, as well as the content of the display, was not created by members of the Fiscal Court, but by their counsel in this lawsuit. This is not information that would have been available to an objective observer and, thus, the Court may not consider this in its analysis.[10]

■ The Supreme Court in *McCreary County* provided direction to the Court as to what government acts an "objective observer" may consider in deducing a county's purpose: the plain language of the enactment itself; any readily discoverable facts; traditional external signs in the text, legislative history, and implementation of the statute or other enactment; comparable official acts; context and contemporaneous legislative history; historical context of the enactment; the specific sequence of events leading to the enactment's passage; public comments of an enactment's sponsor; and other openly available data.

In the present case, the only express public pronouncement of the county's stated purpose is found in its Resolution, wherein the county stated that it "desire[d] to educate and provide all of its citizens with information concerning the Foundations of American Law and Government. . . ." While *McCreary County* counsels that a legislature's stated reasons for a particular action usually get deference, "the secular purpose required has to

---

10. While the Court agrees with the defendants' general contention that these "after the fact" statements are not relevant to the analysis, it is not necessarily true that after-the-fact statements may *never* be considered. Interestingly, the Sixth Circuit in *Mercer County* considered the affidavit of the County Judge–Executive, obviously written after the fact, and his statement therein that the purpose of the display was to recognize American legal traditions. This suggests that the "objective observer" may consider statements made by officials after the Ten Commandments are erected—even after litigation is filed. The Sixth Circuit noted that "[t]he only history the objective observer would incorporate into this display is the statement of Judge McGinnis [filed after the litigation was instituted] that the purpose of the display is to recognize American legal traditions." *Mercer County,* 432 F.3d at 631. The Court is not sure what to make of this, but in an abundance of caution, did not consider any of the county officials' post-litigation testimony when analyzing the "official acts" of the county.

be genuine, not a sham, and not merely secondary to a religious objective." *McCreary County*, 545 U.S. at 863, 125 S.Ct. 2722. Thus, the Court cannot only consider the county's stated purpose in isolation; if there is evidence that the stated purpose is a sham, the Court is not required to take it at face value.

Unlike the *Mercer County* case, where there was simply *no* evidence to suggest a religious objective, there is arguably at least *some* evidence in the present case to suggest that the officially-stated purpose in the Resolution perhaps should not be taken at face value. Looking only at the evidence available to an objective observer, the county first permitted a copy of the Ten Commandments to remain in the courthouse for approximately two years. The *McCreary County* noted that a display that sets out the text of the Commandments standing alone, not part of an arguably secular display, can only send one message: "[t]he reasonable observer could only think that the [county] meant to emphasize and celebrate the Commandments' religious message." *McCreary County*, 545 U.S. at 869, 125 S.Ct. 2722. However, the circumstances surrounding this "stand-alone" copy of the Ten Commandments are different from the circumstances surrounding the stand-alone copies in *McCreary County* and *Garrard County*, Civil No. 01–481–KSF, 517 F.Supp.2d 925, 2007 WL 2780987 (E.D.Ky.).

In those cases, the stand-alone copies of the Ten Commandments were just that— they were erected alone with no surrounding documents to dilute the religious message. They were also posted in high-traffic areas of the respective courthouses (in the case of Pulaski County, this was a requirement of the accompanying resolution). In the present case, on the other hand, there was no discussion regarding where the copy should hang and no requirement that it hang alone. The copy of the Ten Commandments did not hang in isolation, which would tend to highlight its message, but with other documents (albeit there was nothing to tie the documents together other than the fact that they had been approved by the Fiscal Court at some point). The copy of the Ten Commandments was not larger than any of the other documents. It was hung in an area of the courthouse that was used for Fiscal Court meetings where business of the county was conducted, so anyone attending such meeting would encounter the display. However, this was not a "high-traffic" area of the courthouse; unless a Fiscal Court meeting were being conducted or it was an election day, a citizen would essentially have to go looking for the display in an empty, darkened room in order to encounter it. Under these circumstances, the religious message conveyed by the posting of the Ten Commandments is diminished in comparison to that in *Mercer County* and *McCreary County*,[11] and while the posting of the Ten Commandments without any other historical documents evidences a religious purpose, it is the Court's opinion that the message is diluted in comparison to the situations in other counties such as McCreary, Pulaski, and Garrard.

There are additional differences between this case and the *McCreary County* case. No county funds were used to pay for either display herein. The idea was ap-

---

**11.** In *McCreary County*, the Supreme Court noted that a government-initiated effort "to place this statement [the Ten Commandments] *alone* in public view, a religious object is unmistakable." *McCreary County*, 545 U.S. at 869, 125 S.Ct. 2722 (emphasis supplied). In the present case, this was neither a govern-

ment-initiated effort (as a citizen initiated the idea), nor was it a case of the Ten Commandments being posted alone (as they were posted alongside other documents). Further, the "public view" in which it was placed was very limited in comparison to the other two cases cited.

parently initiated by a citizen, not by county officials. There was no order to hang the Ten Commandments in a "high traffic area" of the courthouse. There was no ceremony when either display was posted. There was no overtly-religious resolution that spoke of Jesus Christ as the "Prince of Ethics" or using language similar to the resolution in *McCreary County*, a resolution that was never disclaimed even after the Foundations Display was erected. Rowan County, unlike the counties in *McCreary County*, also took authorizing action with respect to a "new" purpose of educating the public. Importantly, there was not, as in the *McCreary County* and Garrard County cases, an intervening display that plainly focused on religion.

Based on the above, the Court finds that an objective observer in Rowan County has some limited recent history of religiously-motivated governmental acts to incorporate into the present Foundations Display. The real question is, has the county done what it takes to get it "right"? This requires the Court to determine whether there have been "genuine changes in constitutionally significant conditions" such that Rowan County has shaken off the taint of the previous unconstitutional displays. To paraphrase what one court within this circuit has stated, in order to post the Ten Commandments in the future in a constitutionally permissible manner, "*these* [Rowan] County Defendants must show that they have purged themselves of their original sectarian purpose relating to the posting of the Ten Commandments." *ACLU of Tn. v. Rutherford County, Tn.*, 2006 WL 2645198 (M.D.Tenn. Sept. 14, 2006) (emphasis in original).

The courts do not provide any guidance on what these changes might consist of,[12] but the only evidence of any changed circumstances in the present case appears to be (1) the Resolution; and (2) the Foundations Display itself. The *Mercer County* court seems to suggest that the Foundations Display is facially valid, and if context and history were unknown to the objective observer, then that would be the end of the analysis. But we know that context and history *must* be taken into account. So, as stated above, an objective observer would incorporate context and history into the present Foundations Display and conclude that the county had some religious purpose even in displaying the Foundations Display. However, the question is whether that purpose *predominates* other purposes.

There is arguably a question as to whether the passage of the Resolution is a "genuine change of constitutionally significant conditions." While the Ten Commandments had remained in the Fiscal Courtroom for almost two years, the Resolution was passed exactly three weeks after suit was filed. However, this was *before* this Court had announced that it would likely find the Foundations Display in Mercer County constitutional. It was also included in an "authorizing act" endorsed by the Fiscal Court. Therefore, this arguably raises a question as to whether the county's stated purpose is a mere litigation position or whether it was a genuine attempt to change conditions or was an attempt to avoid litigation, which is an acceptable purpose.[13]

---

**12.** In *Rutherford County*, the district court suggests that one such change might be the election of new county officials.

**13.** Unlike the resolution at issue in Garrard County, the Resolution herein does not suggest that it was the *objective observer* who was mistaken or somehow misinterpreted the county's previous purpose and intent. This language in the Garrard County resolution seemed implausible and disingenuous and insufficient to "cast off the objective so unmistakable in the earlier displays." *McCreary County*, 545 U.S. at 872, 125 S.Ct. 2722.

■ However, given the weakened history of a prior religious purpose in this case, the Court finds this Foundations Display to be constitutional. Based on the above, the Court finds that the plaintiffs have failed to show that religion was the county's *predominant* purpose in posting the Foundations Display—it may have been *a* purpose, but it was not *the predominant* purpose.

### D. *Effect*

■ It is not enough to say that this case comes closer to *Mercer County* than *McCreary County* from a factual perspective. The Court must also consider the second prong of the *Lemon* test, "the so-called 'endorsement' test, [which] asks whether the government action has the purpose or effect of endorsing religion." *Mercer County*, 432 F.3d at 635 (citation omitted).

Under the endorsement test, the government violates the Establishment clause when it acts in a manner that a reasonable person would view as an endorsement of religion.... This is an objective standard, similar to the judicially-created "reasonable person" standard of tort law.... "Accordingly, we do not ask whether there is *any* person who could find an endorsement of religion, whether *some* people may be offended by the display, or whether *some* reasonable person *might* think [the government] endorses religion.... Rather, the inquiry here is whether *the* reasonable person *would* conclude that [Rowan] County's display has the effect of endorsing religion."

*Id.* at 636 (citations omitted) (emphases in original). Again, "[c]ontext is crucial to this analysis." *Id.* at 637.

Based upon the analysis above, a reasonable person would conclude that the Foundations Display does *not* have the effect of endorsing religion, for the reasons stated

in *Mercer County. Mercer County*, 432 F.3d at 637–38 (noting that all of the documents had a particular historical significance to the development of the country and that the documents were displayed in such a way that did not direct focus to any one particular document). Thus, the Foundations Display on its face does not have the primary effect of advancing or endorsing religion.

Given the history and context of the Foundations Display, it is the Court's opinion that a reasonable person would not conclude that the county's display has the effect of endorsing religion. As noted above, the evidence of a religious purpose is weak and does not predominate the county's stated purpose of providing an educational display.

## V. CONCLUSION

Based on the above, the Court finds that Rowan County has "gotten it right" in the present case. Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

(1) the defendants' motion for summary judgment [DE # 51] is GRANTED;

(2) judgment shall be entered separately herein; and

(3) this is a final and appealable order.

### *JUDGMENT*

In accordance with the opinion and order entered contemporaneously herewith, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

(1) the defendants' motion for summary judgment [DE # 51] is GRANTED;

(2) the plaintiffs' claims against the defendants are DISMISSED WITH PREJUDICE and the plaintiffs shall take nothing thereby;

(3) this matter is STRICKEN from the active docket of the Court; and

(4) this is a final and appealable judgment.